HICKSON *vs.* MOBLEY *et al.*

1. Where a complainant in her bill expressly disclaimed title to a certain lot of land, there was no error on the part of an auditor, to whom the case was referred, in finding that, under the allegations in her bill, she could not recover that lot; nor was there error on the part of the chancellor in overruling an exception of law to such finding. Nor was it any reply to this position to say that the facts which led the complainant to make the allegation were found not to be true by the auditor, and that she should therefore be allowed to recover under a prayer for general relief; the report of the auditor having been of file for several months before it was submitted to the judge, and no amendment to the bill having been made.

2. There was no error in the other rulings of the auditor to which exceptions were filed, nor did the court err in dismissing such exceptions.

February 18, 1888.

Title. Auditors' reports. Amendment. Practice in superior court. Before Judge BOYNTON. Harris superior court. April term, 1887.

Myra T. Hickson filed her bill against James M. Mobley, Reuben B. Mobley, Rolin A. Russell, George H. Bryan, administrator of Thomas Hickson, deceased, and Wm. M. Griggs, alleging as follows: Her husband, Thomas Hickson, died in August, 1864, intestate, leaving a large estate, real and personal, in Harris county, and complainant, his widow and sole heir at law, in possession of it. The realty consisted of lots of land numbers 213, 214, 215, 216, 231, 232, 233, 234, 235, 236, 246, 249 and 250, all in the 21st district of said county, comprising 2,600 acres, more or less, known as his home and plantation. The personal property also is set forth. Complainant married Hickson about two years before his death, when she was 32 years old. Her home had been in Atlanta, and she lived in Harris county only since her marriage, and therefore was a comparative stranger there at the death of her husband, and without any one to whom to apply for advice as to the estate. She had scarcely any education, and was of a trusting and confiding mind, and had no experience in the management of property and no knowledge of the requirements of the law as to estates. While in grief and distress, George H. Bryan visited her and offered to aid her in the management of the estate, referring her to James M. Mobley, an attorney at law, for advice, highly commending him. These two represented to her that it was necessary to have an administrator; that it was impossible for her to manage so large an estate, and unsafe for her to attempt to control it at that time. Bryan offered to act as administrator, and was commended by Mobley as honorable, rich and experienced. He demanded a commission of four per cent. in lieu of that allowed by law, and Mobley offered to aid in the administration. Relying on their statements and promises, she gave her consent, and Bryan was appointed administrator, qualified, gave bond and took possession of the estate, which was appraised at $285,594; its total indebtedness was only $4,145. Mobley was attorney for Bryan as well as for complainant, and received fees from

them.  He was apparently kind to her, invited her to his home, etc., and induced her to think that he was her best friend.  She was not advised with in the management of the estate, but Bryan and Mobley assured her that they were acting for her best interests ; and having implicit confidence in them, she obeyed their instructions.  Not until within the past two months has plaintiff understood the actions and motives of Bryan and Mobley, but in the light of the facts which have come to her knowledge, she charges that, through concealment, misrepresentation and fraud, they so managed the estate as to appropriate it to their own use, well knowing that she was the sole heir and that the estate was solvent.  They began by telling her that it was insolvent, and made her believe so by continual misrepresentations to that effect ; by selling off the personal property ; by refusing to pay the debts, when there was ample cotton to do so, and allowing suits to be brought ; by advising her that it was necessary for her to take dower and a year's support, and having it set apart to her ; by filing a bill to marshal the assets of the estate on the ground of insolvency ; by buying in for her over $1,000 worth of personal property, and having her execute a mortgage on her dower to secure the price thereof; and by having the lands of the estate advertised for sale, but why not sold complainant does not know.  They advised her to lease her dower and to remove to a city, saying that the income therefrom would be sufficient for her support; she acted on this advice, leaving her dower to one Smith, step-son of one Simpson, father-in-law of Reuben B. Mobley.  James M. Mobley, as attorney, sued the estate in 1867, although he was attorney for Bryan, administrator, and for the estate.  He and Bryan used the few debts the estate owed as a means to secure title to themselves to the lands, having at the same time possession of all except the dower.  They converted to their own use all the money, rents and personal property ; permitted the debts to be reduced to judgment, and then controlled the executions.

The administrator advertised, in an Atlanta newspaper, not in circulation in Harris county and not the paper appointed for administrator's sales to be published in, lots numbers 213, 236, 246, 250, 235 (except about 25 acres), and 232, to satisfy vendor's lien of the administrator of Simpson. There are no returns of the administrator or of such sale. In October, 1868, Bryan again advertised the lands for sale and put up lot number 232 which was knocked down to one Holdiness for $1,110. The Mobleys proclaimed that that lot did not belong to the estate but to the estate of James Simpson, and that Mrs. R. B. Mobley and Mrs. Whitman, heirs of Simpson, claimed a homestead therein; whereupon Holdiness refused to comply with his bid and Bryan surrendered the lot in satisfaction of the debt. Mrs. Mobley and Mrs. Whitman, through J. M. Mobley, as attorney, took a homestead in that land, which they have since held. Notwithstanding the surrender of that lot in satisfaction of the debt, and the taking of the homestead therein, the Mobleys had the Simpson *fi. fa.* levied on it in September, 1869. It was sold at sheriff's sale and bid off by and deeded to R. B. Mobley for $95, although worth $2,000, he announcing that his wife and Mrs. Whitman claimed it and had taken a homestead therein, by which others were prevented from bidding. The *fi. fa.* of vendor's lien was fraudulent, illegal and void. No deed was ever made by Simpson, the vendor, or his representative, as provided by law. Notwithstanding the full settlement of the Simpson *fi. fa.*, Mobley, on November 12th, 1872, had an *alias fi. fa.* issued upon the same judgment and levied upon the remainder interest in the dower land, which was sold at sheriff's sale and bid in by the Mobleys. Complainant was then residing in Augusta, penniless and without knowledge of such fraudulent conduct. The Mobleys placed the *alias fi. fa.* in the hands of the sheriff, and it was levied on 990 acres of lands not included in the dower, and these were sold by the sheriff in September, 1873, and bid in by the Mobleys

for $825. Similar fraud and misconduct is charged as to another debt, and as to sale of lands thereunder although the debt was discharged, and Rolin A. Russell and Wm. M. Griggs are implicated in the fraud she says was practiced upon her. The Mobleys are in possession of all the lands of the estate, which they have gotten fraudulently and illegally, save lot 232, which they surrendered in satisfaction of the Simpson debt, and since January, 1873, have received the profits thereof. Defendants refused to disclose to complainant the true condition of the estate, but intentionally deceived and misled her. Being without education, or relatives in Harris county, having to make her support by her daily labor, and residing in another part of the State, she was unable to investigate or to employ counsel to investigate the affairs of the estate, although she repeatedly made every effort to do so, until she secured her present counsel, who through their diligence ascertained the facts. She waives discovery, and prays for account and settlement by Bryan, administrator; that the deeds made under the sheriff's sales, etc., be decreed to be void, and the title be vested in her; that she have account and settlement for rents and profits, and have general relief and process, offering to do equity, etc.

It is unnecessary to set out the answers of the defendants, which were very full in setting forth the history of the transactions in question. They deny all charges of fraud and misconduct. The case was referred to an auditor, and on the hearing before him a great volume of evidence was submitted. He made a lengthy report, summing up as follows:

1st. That there was no combination or collusion between James M. Mobley and George H. Bryan to procure the administration of the estate for Bryan, and no fraud or misrepresentation by Mobley to procure Bryan's appoinment; that in fact, he did not advise, or have anything to do with, the appointment of Bryan; and that he received none of the personal property of the estate, except what he bought at the sales and paid for.

2d. That Bryan mismanaged the estate, and would be liable for the waste thereof, but that complainant's rights against him therefor, and for the money and personal property received by him up to April, 1870, have been settled by the decree of Muscogee superior court in the case brought by him against Bryan and Lee, and she is, therefore, not entitled to recover against him therefor for any waste or mismanagement prior to that time.

3d. That James M. Mobley represented Mrs. Hickson, as an attorney at law, in procuring dower and year's support, and in obtaining a divorce from Hanlon, but that he did not represent her in the Davidson case in the United States court, or in any other litigation.

4th. That James M. Mobley represented Bryan, the administrator, in certain suits against him by creditors of the estate, and in the bill to marshal the assets; and he represented certain creditors and the administration in resisting the application of Mrs. Hickson for a homestead. He also represented the administration in some small matters in 1866.

5th. That lot number 232 was not turned over to the Mobleys in settlement of the Simpson debt, and was not accepted as such settlement, and that the common law judgment of Gordon, administrator of Simpson, was a valid judgment against Bryan, as administrator of Hickson.

6th. That complainant is not entitled to a decree against R. B. Mobley for lot number 232, nor the rents and profits thereof under this bill, the allegations in her bill not authorizing such a decree.

7th. That the Davidson debt was never paid by Bryan, and that the judgment rendering therein in the United States Court against Mrs. Hickson and Mrs. Bryan was a good and valid judgment against them.

8th. That J. M. and R. B. Mobley were *bona fide* purchasers of the dower lands of Mrs. Hickson from Peabody, assignee, without notice at the time of their purchase of any equities of Mrs. Hickson; that the deeds from Pea-

body, assignee, and the United States marshal vested the title in them; and that their possession under said deed has ripened into a prescriptive title.

9th. That lots numbers 231 and 246 have never been in the possession of J. M. and R. B. Mobley, and that they have not received any rents and profits therefrom; that lot 231 did not belong to the estate of Thomas Hickson, and was never in possession of his administrator; and that lot number 246 was sold at sheriff's sale in April, 1873, under the McGehee *fi. fa.* and bought by J. F. C. Williams and R. A. Murphey.

10th. That J. M. and R. B. Mobley were *bona fide* purchasers of lots numbers 236, 213, 249 and 250, and that part of lots 235 and 214 not included in Mrs. Hickson's dower, at the sheriff's sale under the Lee and other *fi. fas.* in Septembr, 1873, and also of the reversionary or remainder interest of the estate of Thomas Hickson in the dower lands of Mrs. Hickson, after the termination of her dower estate therein, at the sheriff's sale thereof under the Simpson *fi. fa.* in April, 1873; that the deed from the sheriff thereto vested the title in them; and that their possession under said deeds has ripened into a prescriptive title; and that they have been guilty of no fraud upon complainant in respect to said lands, debarring or detaining her from any action therefor.

11th. That George H. Bryan is liable to complainant for the rents collected by him in 1871,—$75.00, with interest from January 1st, 1872; and the rents collected by him in 1872,—$286, with interest from January 1st, 1873. He is also liable for his failure to collect the losses on the sales of land by the failure of purchasers to comply with their bids, as hereinbefore referred to, amounting to $1,185, with interest from September 1st, 1873. And complainant is not barred of her rights thereto by the statutes of limitations, as Bryan has never been discharged from his administration and has never fully administered the estate.

All the judgments against him as administrator became dormant in September, 1880.

To this report, the complainant filed exceptions of law, which were submitted to the decision of the presiding judge, and he overruled them. They appear in the complainant's exceptions to this court, as follows: ·

(1) The auditor reported " that lot number 232 was not turned over to the Mobleys in settlement of the Simpson debt, and was not accepted as such settlement, and that the common law judgment of Gordon, administrator of Simpson, was a valid judgment against Bryan as administrator of Hickson." The complainant excepted to this finding, and the court found against such exception; and the complainant assigns error as follows:

Upon the admissions in the answers of defendants, and upon the facts as reported by the auditor, the common law judgment is not a valid judgment against the estate, and the Mobleys are not *bona fide* purchasers under said common law *fi. fa.* It appears from the facts reported: 1st. That R. B. Mobley was owner of the debt. 2d. That J. M. Mobley (his father) was his attorney, and also attorney for Bryan, administrator. 3d. That the dealings between R. B. Mobley and Bryan in regard to lot 232 were illegal, fraudulent and void; that lot 232 was surrendered by Bryan to Mobley under the purchase money debt upon their taking a homestead; that there was no agreement as to the price it was to be taken back at; that Bryan (the witness of defendant) testified " that he never expected to hear of the debt again after the lot 232 was surrendered to Mobley "; that Mobley has held possession since 1869, and the rents alone (of lot 232) to date amount to $4,500.00, besides accrued interest thereon, which is a larger sum than $——, the principal and interest to date on the purchase money notes known as the Simpson-Gordon debt; that lot 232 was worth $1,500.00, and they bought it under an illegal vendor's lien for $95.00, a grossly

inadequate price; that complainant had no knowledge of the dealings between Bryan and Mobley as to lot 232, or how Mobley held possession of it, until just before this suit; that lot 232 was worth $1,500.00, the remainder of lands were worth $9,500.00, the annual rental of lot 232 was $250.00, rent of other lands $1,000.00 a year.

(2) The auditor reported that complainant was not entitled to a decree for lot 232, under the allegations of her bill. She excepted, and the court decreed thereon as follows:

" I find and decree against the second exception and specifications thereunder, filed by the complainant to the auditor's report, and dismiss the same; also find and decree that the title of land lot 232 was not put in issue by the pleadings, so as to authorize a decree in favor of complainant for same, and this decree is not to affect or interfere with the rights of the parties in any future litigation with references to said lot 232."—Complainant assigns error, because her bill does put in issue the title and possession of lot 232, and unless it was disposed of, as charged in her bill, then it remains the lands of the estate. She prays that the disposition of said lot, by surrender in payment of the purchase money debt, be confirmed, and for that purpose only disclaims any ownership of it, and that the debt be decreed settled. The answer of defendants J. M. & R. B. Mobley, places the title and possession of, lot 232 in issue—claiming title in R. B. Mobley by virtue of purchase at sheriff's sale under the vendor's lien; also that the sheriff placed him in possession, and that his title has ripened by prescription. The following facts, reported by the auditor, establish byond doubt that the title and possession of lot 232 was in issue :

" I find, therefore, that R. B. Mobley was in possession of the lot (232) at the time of the levy thereon by the sheriff, Pritchard, under the vendor's lien *fi. fa.*, it having been surrendered to him by Bryan, and that he claimed possession under the homestead which had been taken

therein by his wife and her sister. Upon examining the record of the foreclosure of the vendor's lien upon the record of bills and writs, the original bill foreclosing the lien having been lost, it appears that the bill was originally filed against lot number 248, and that the figures and number 248 have been changed to 232 on the record (of writs), while on the minutes of that term, the verdict and decree remains against 248, no change having been made in the minutes; it appears too that the alteration of the record was made after the adjournment of the court, for the execution, which was introduced in evidence, shows that it was originally against 248, and that the 248 in the execution was also changed to 232. The court adjourned on the 12th of April, 1867, and the execution is dated April 25th 1867; the execution was levied by Pritchard, sheriff, on lot 232, and it was advertised and sold by him on the 7th day of September, 1869, when R. B. Mobley became the purchaser at $95.00, there being only one other bid for the property, and Pritchard made a deed to him thereto. No evidence was offered connecting the defendants in any way with the alteration of the records, and the proof being that they came from the custody of the clerk, the presumption would be that the alterations were made by him; still, in the absence of any explanation and of any order of court, the alterations, if made by him, were unauthorized, and the verdict and decree in the case did not authorize the issuing of an execution against 232, and the levy and sale thereof under said execution was illegal and void. I further find that R. B. Mobley and his wife owned the *fi. fa.* at the time of the levy and of the sale, R. B. Mobley's wife and Mrs. Whitman being the only heirs of the Simpson estate, and R. B. Mobley having bought the entire interest of Mrs. Whitman in the estate, on July 29th, 1869, the sheriff's deed to him was not such color of title as that a prescriptive title could be founded upon it. Under the facts as they appear in testimony, his original possession of the lot under the homestead set apart to his wife and

her sister, and under his arrangement with Bryan, was wrongful and fraudulent in law, and his arrangement with Bryan with reference to the rent of the lot was illegal. The lot belonged to the Hickson estate, and Bryan, being the administrator, could not appropriate the rents to his own use under any arrangement with Mobley; the price at which the land sold was grossly inadequate; and as Mobley owned and controlled the *fi. fa.*, he was chargeable with notice of the illegality of the levy and sale by the sheriff. It is true that all this happened in 1869—fifteen years before the filing of complainant's bill,—and that the fact that the lot had been subjected by the heirs of Simpson to the vendor's lien, and that they had gotten possession of the lot as a homestead, was set up by Bryan in his answer to the bill filed by her in Muscogee superior court; but she knew nothing of the facts in relation to the proceedings for the foreclosure of the vendor's lien, and the sale under the *fi. fa.*, and it does not appear that she had actual knowledge of any of the facts in relation to R. B. Mobley's possession of the land. Under the facts, then, as they appear from the testimony before me, R. B. Mobley did not acquire prescriptive title to the land by his possession under the sheriff's deed, and complainant would not be barred of her rights by the statute of limitations."

Complainant's third exception was to the following report of the auditor: "That J. M. and R. B. Mobley were *bona fide* purchasers of the dower lands of Mrs. Hickson from Peabody, assignee, without notice at the time of their foreclosure of any equities of Mrs. Hickson; that the deeds from Peabody, assignee, and the United States marshal vested the title in them, and that their possession under said deeds has ripened into a prescriptive title."

The court dismissed the exception, and complainant assigns error for the following reasons: The master reports that, in 1868, or January, 1869, R. B. Mobley, as owner of the Simpson debt, illegally took possession of lot 232, giving Bryan, administrator, the rent for one year in part

payment of Bryan's individual debt against the Simpson estate; that J. M. Mobley was the attorney in the transaction; that R. B. Mobley has no title to lot 232, and complainant is not barred on account of the fraud in the transaction; that he has had possession since 1869, and the annual rent is worth $250; and that their purchase of the dower land was in November, 1872, for $450, and the price was inadequate. Other reasons also were assigned to show error in this finding.

The remaining exceptions of the complainant are not now material to be set out.

A. A. Dozier, L. F. Garrard and Hatcher & Peabody, for plaintiff.

Peabody, Brannon & Battle, W. A. Little, C. J. Thornton, J. F. Pou, B. A. Thornton and J. M. Russell, for defendants.

Simmons, Justice.

Mrs. Hickson filed her bill in Harris superior court against Bryan, administrator, and others, in which she made many allegations, as will be seen in the report of this case. The case was referred to J. M. McNeill, Esq., as auditor, with the powers of a master in chancery. After a long and tedious hearing of the evidence in the case, he made an able and lucid report to the superior court of Harris county. To that report, counsel for Mrs. Hickson filed six exceptions, which they style " exceptions of law." These exceptions were heard and determined by his honor, Judge Boynton, of the Flint circuit, who, after a careful consideration of the same, overruled and dismissed them. To this judgment the complainant excepted.

One of the chief points in controversy before the auditor seems to have been as to lot of land 232. The auditor reported that the complainant could not recover this lot under the pleadings in her bill. This was excepted to as

matter of law, and the exception was overruled by the judge in the court below. This was the only exception of pure law made by the complainant.

We have carefully read the bill of the complainant and the report of the auditor, and we do not see that the court committed any error in disallowing and overruling these exceptions. The auditor was right in holding that the complainant could not recover this lot of land under the allegations in her bill, and the judge in the court below was right in so ruling. The bill charges that J. M. & R. B. Mobley, two of the defendants, "are in possession of all of the lands of said estate, which are held illegally as against your oratrix, save and except lot number 232, which was disposed of in the settlement of said Simpson estate *fi. fa.*, as aforesaid." There is an express allegation that she does not claim this lot of land. In other words, she admits in her bill that she has no right, under the facts as she charges, to recover this land; that it does not belong to her. Her counsel contended that while this allegation was in the bill, the facts which led her to make the allegation were not found to·be true by the auditor, and as she was mistaken as to the facts on which the allegation was based, she ought, in a court of equity, to be allowed to recover, she having a prayer in her bill for general relief. It appears that this report was filed by the auditor several months before it was submitted to the judge. Counsel for the complainant, therefore, must have known what the report of the auditor was, and they had ample time to amend the bill, either by striking out this allegation or by putting it in the alternative. They failed to do so and preferred to let it stand as a disclaimer of the right to recover this lot of land. The prayer for general relief is broad, and will cover any relief that is germane to the bill, but we do not think it is broad enough to allow a complainant to recover possession of property in which she expressly disclaims title. This disposes of this exception.

We have carefully scrutinized the other· exceptions made to the auditor's report, and if they are exceptions of law, the facts disclosed by the record do not show that the auditor erred in his conclusions, or that the court erred in sustaining the report of the auditor and dismissing the exceptions. We therefore think that the court did not err as complained of by the plaintiff in error; and the judgment is affirmed.