## BRODERICK *et al. v.* REID *et al.*

1. A temporary administrator can neither pay debts nor distribute an estate to heirs. A person who has been appointed temporary administrator may, by consent of all parties concerned, continue to carry on a business of the intestate, looking to the sale of the business as a going concern. Such interested parties can not then complain. The finding of the auditor, approved by the court, that R. S. Reid was authorized to carry on the business of J. H. Reid, and that R. S. Reid did not mismanage the same, is supported by evidence.

2. Under a general prayer in an equity case, the plaintiff may have such relief as is consistent with and entirely within the scope of the pleadings. In the present case the prayer for general relief, considered in connection with the pleadings, was sufficient to authorize a finding for the defendant, R. S. Reid.

3. The Columbia Drug Company, one of the plaintiffs in error, complains of the finding of the auditor, approved by the court, to ·the effect that the drug company was estopped from holding the defendant, R. S. Reid, liable personally and individually for goods purchased and sold in the course of business by the "estate of J. H. Reid." It is insisted that said Reid did not plead estoppel, that no estoppel would apply, and that under the authorities cited the auditor was not authorized to make the aforesaid finding. *Held,* that the assignment of error is not meritorious. By referring to the answer of the defendant Reid, it will be found that, while the word "estoppel" was not used, all the elements of estoppel are set out. It was not necessary that the pleader should' have used the word "estoppel." The auditor was authorized under the law and the evidence to find that the drug company extended its credit to the "estate of J. H. Reid."

4. "The rule is well settled that in equity cases this court will not interfere with the discretion of a trial judge in overruling exceptions of fact to an auditor's report, unless it appears there has been a manifest abuse

Appeal and Error, 4 C. J. p. 807, n. 16; p. 1138, n. 63.

Equity, 21 C. J. p. 679, n. 66, 67.

Estoppel, 21 C. J. p. 1248, n. 52.

Executors and Administrators, 24 C. J. p. 59, n. 78; p. 1180, n. 90, 95 New; p. 1181, n. 19; p. 1182, n. 21.

of such discretion." *Cranston* v. *Bank*, 112 *Ga.* 617, at page 620 (37 S. E. 875), and cit.

5. One exception is to the decree in favor of R. S. Reid, based upon his individual liability to a named bank because of his indorsement and part payment of a promissory note for $6,425.16, representing an indebtedness of the estate. The evidence of Reid shows that a balance of $3200 remains unpaid, and that the payments made were during his management of the drug business; and his testimony requires a finding that such payments were not made from his individual funds but from funds of the business. The judgment in this respect is affirmed on condition that the amount awarded to Reid therein be reduced to $3200 and interest thereon due to the bank, and that this sum, or the proportionate amount realized thereon, be paid to the bank as payment on said note.

6. Under the pleadings and evidence we find no substantial error. Therefore the judgment is affirmed, modified as indicated in the preceding headnote.

No. 5755. JUNE 18, 1927. ON REHEARING, JULY 14, 1927.
REHEARING DENIED JULY 29, 1927.

Equitable petition. Before Judge Meldrim. Chatham superior court. September 25, 1926.

On June 28, 1923, John Reid Broderick, Catherine M. Broderick, Edward F. Broderick Jr., Robert S. Broderick, and Mary E. Broderick (the last two being minors, by their next friend, Edward F. Broderick) filed a petition against Robert S. Reid for a receiver, accounting, injunction, and a decree adjudging petitioners entitled jointly to a one-fourth interest in the assets of the estate of John Henry Reid, deceased, as his heirs at law. The receiver was appointed. Interventions were then filed by various firms from whom the defendant, who was temporary administrator of said estate, had made purchases in the operation of the drug-store business. The court referred the cause to an auditor. To the auditor's report exceptions of fact and exceptions of law were filed by the above petitioners, by Edward F. Broderick, and by the Columbia Drug Company, intervenor. The court disallowed and overruled all of these exceptions, and passed an order sustaining the report of the auditor. The petitioners and Edward F. Broderick excepted pendente lite to the court's order of disallowance, and assigned error thereon here. The court proceeded to enter up a final judgment and decree sustaining and affirming said auditor's report, the following recitals of which decree will show what the report contained:

"(a) That the exceptions of law and exceptions of fact filed by

Edward F. Broderick, by Columbia Drug Company, and by the above-named complainants in the original petition, be overruled, disallowed, and disapproved. (b) That the defendant, Robert S. Reid, is not indebted to the estate of John Henry Reid, deceased, nor to the receiver appointed in this cause, nor to any of the intervening creditors in this cause. (c) That the defendant, Robert S. Reid, have judgment against H. C. Frecht, as receiver of the estate of John Henry Reid, deceased, and against the assets of said estate, in the sum of $3,141.48, besides interest, and in the further sum of $6,425.16, besides interest. (d) That H. C. Frecht, as receiver in this cause, have judgment against Edward F. Broderick, for the benefit of said estate, in the sum of $500, with interest at 7 per cent. from March 29, 1919, and in the sum of $3,321, with interest at 7 per cent. from April 28, 1919, and in the sum of $111.53, with interest at 7 per cent. from April 28, 1919. (e) That each of the intervenors in this cause have judgment against H. C. Frecht, as receiver of the estate of John Henry Reid, deceased, and the assets in his hands, as follows: Solomons Company, $870.51 principal, besides $233.57 interest from July 2, 1922, to May 1, 1926; Whitehall-Tatum Company, $57.63 principal, besides $12.09 interest from May 1, 1923, to May 1, 1926; Penniman-Haile Company, $365.52 principal, besides $78.46 interest from June 28, 1923; Colgate & Company, $59.72, with interest of $6.26 from July 30, 1924, to May 1, 1926; H. Gamse & Brother, $55.66, besides $11.02 interest from July 30, 1924, to May 1, 1926; George J. Cleary, trading as Cleary Motorcycle Company, $308.60, with $90 interest from March 1, 1922, to May 1, 1926; The Kenyon Company Inc., $54 with interest of $10.92 from June 4, 1923, to May 1, 1926; William Peterman Inc., $17.85, besides $2.69 interest from March 1, 1923, to May 1, 1926; Columbia Drug Company, $826.63, besides $161.16 interest from August 1, 1923, to May 1, 1926. (f) That the claims and interventions of Columbia Drug Company and of Penniman-Haile Company against Robert S. Reid individually be denied, and judgment rendered in favor of the said Robert S. Reid individually against the claims of each of said intervenors. (g) That each of the judgments awarded, as hereinbefore recited, prorate equally as between themselves in the distribution of the funds collected by or recovered by the receiver, or in his hands, after the payment of costs of court and expenses.

(h) That after payment of the indebtedness above recited, any surplus in the hands of the receiver be subject to equal division between the heirs at law of the said John Henry Reid, deceased, for which judgment is rendered as follows, to wit: to Mary Ellen Reid a one-quarter interest; to the executors of Thomas J. Reid, deceased, a one-quarter interest; to Robert S. Reid individually a one-quarter interest; to the above-named petitioners in the original complaint, jointly, a one-quarter interest."

To each and all of the above judgments of said decree the petitioners and Edward F. Broderick and the Columbia Drug Company, intervenor, except and upon each they assign error. Edward F. Broderick individually had been made a party defendant to the original cause by the court on January 4, 1924, as a result of the answer of Robert S. Reid in the nature of a cross-bill.

The gist of the exceptions to the report of the auditor which was filed May 1, 1926, were as follows: By the petitioners: (1) To the finding that the evidence failed to show mismanagement or bad faith on the part of Robert S. Reid in conducting the affairs of the estate when temporary administrator; the error being in the fact that a temporary administrator has no lawful authority to disburse any money of such estate, whereas the evidence showed Reid had carried on a retail drug-store with funds of said estate for more than four years, during which time he disbursed $97,-707.63 of the funds of said estate, resulting in a deficit of $2,674.54. (2) To the finding that there was no money or property of said estate in said Reid's hands, nor had he ever owed the estate anything; the error being in the fact that the evidence showed the above disbursements and deficit. (3) To the finding that said Reid advanced to said business $5,501.48 and had been reimbursed $2,360, leaving a balance due him as creditor of the estate of $3,-141.48, with interest at 7 per cent. from June 28, 1923; said finding being erroneous because the evidence showed that Reid as temporary administrator caused the above deficit, illegally using the estate's funds, and the estate can not be charged with interest in any sum, and that if Reid is due anything it is only the difference between said $3,141.48 and said deficit, or $466.94. (4) To the finding that Reid assumed individually a liability represented by a promissory note for $6,425.16, discounted at the Peoples Bank of Savannah, on which he and Edward F. Broderick were accommo-

dation indorsers only, protested for non-payment, said amount being due Reid by the estate, with interest; the same being erroneous, because the evidence showed the note was no obligation of the estate of John Henry Reid. (5) To the finding that said amount of said note was due Reid by the estate; this being erroneous because it was admitted by Reid in his evidence that he did not pay said note. (6) To the finding that Reid is not a debtor but is a creditor of said estate; the same being erroneous because the evidence showed that Reid had possession of the estate from April 28, 1919, to July 6, 1923, making the above disbursements, causing said deficit, and the evidence put in by Reid showed a further sum of $730.25 "cash difference for further investigation," unaccounted for by Reid, and other evidence showed Reid deposited $358.98 in said bank, unaccounted for by him and undelivered to said receiver. (7) To the finding in favor of each of said intervenors the respective sums set out as an indebtedness of said estate; the error being in the fact that under the evidence these indebtednesses were those of said Reid under accounts contracted by him as said temporary administrator, and represent purchases made without authority of law, and long after the death of said John Henry Reid.

By Edward F. Broderick: (1) To the finding that no notice was given to the children of Mrs. E. F. Broderick or to the creditors of exceptor's adverse claim; the error being in the fact that no notice was required by law to the several heirs, because the notice of adverse claim to the temporary administrator was sufficient, the said fund being the sum of $3300 retained by exceptor at the time he turned the estate over to the temporary administrator. (2) To the finding that exceptor's claim was not based upon a claim of right; the same being erroneous because the evidence showed that the said sum claimed belonged to exceptor, he having drawn a check therefor on said bank to compensate himself for services performed said estate which had never been paid for. (3) To the finding that Broderick did not acquire a valid prescriptive title to any part of said trust funds; this being erroneous because the evidence shows exceptor acquired prescriptive title to $3321, the amount alluded to as $3300, in virtue of more than four years title by adverse possession with actual notice to the temporary administrator and to the heirs at law: (4) To the find-

ing that Broderick is not entitled to any compensation for services alleged to have been rendered by him in conducting said business, which is erroneous because the evidence showed Broderick carried on said drug-store business for more than four years successfully, decreasing the liabilities and increasing the assets of the estate, and because the opposite parties in seeking equity in this litigation must do him equity. (5) To the finding that Broderick was acting in a fiduciary capacity, and can not claim adversely to the estate for which he acted; this being erroneous because the evidence showed his claim was based on adverse possession after he ceased to act in such capacity and after appointment of the temporary administrator. (6) To the finding for said estate and against Broderick $500 with interest, and $3321 with interest, and $111.53 with interest; this being erroneous because the evidence showed in exceptor a prescriptive title to the $3321, no claim in any of the pleadings against exceptor for the $111.53, an open account accruing prior to April 30, 1919, and now barred by limitation. (7) To the finding that Broderick can not recover on a quantum meruit, erroneous because the question of near relationship between parties is not involved in exceptor's claim. (8) To the finding that Broderick's claim for compensation is barred by the statute of limitations, erroneous because said statute has not been asserted by any party to this cause. (9) To the finding that there are no pleadings upon which Broderick could recover upon a quantum meruit; the same being erroneous because said finding fails to recognize that exceptor would be equitably entitled to compensation for valuable services rendered, though no claim therefor by name is made in the pleadings, when exceptor established such claim in his evidence.

By Columbia Drug Company: (1) To the finding that the intervenors furnished none of the merchandise covered by their claims to Robert S. Reid individually, that the accounts are not so made out, and that the indebtedness is that of the estate; the error lying in the fact that the pleadings, admissions, agreement of counsel, and evidence show that this exceptor's claim represents purchases made by R. S. Reid after the current year of the death of John Henry Reid and prior to the appointment of the receiver, and without any agreement relieving Robert S. Reid from individual liability, said purchases being made by Robert S. Reid as temporary administrator of the estate of J. H. Reid. (2) To the finding that

under the undisputed evidence the intervenors are estopped from claiming individual liability upon the part of Robert S. Reid; this being erroneous because said Reid failed to plead any estoppel, and it is not involved, because it will not of itself arise from the fact of the one selling the goods knowing they are sold to the representative of another's estate.

*H. Wiley Johnson* and *Hartridge, Wright & Brennan,* for plaintiffs.

*Lawrence & Abrahams, A. J. Ryan Jr., McIntire, Walsh & Bernstein, Connerat & Hunter, Bouhan & Atkinson,* and *Girard M. Cohen,* for defendants.

GILBERT, J. This case, on preliminary phases, has been twice before us. *Columbia Drug Co.* v. *Reid,* 158 *Ga.* 375 (123 S. E. 269) ; *Broderick* v. *Reid,* 159 *Ga.* 395 (126 S. E. 15). After an examination of the case made by the present record, we affirmed the judgment of the trial court, directing a modification in one respect. Before the remittitur was sent out, a motion for rehearing was filed. We granted a rehearing to clarify one of the rulings, and in order to deal specifically with an assignment of error made by the Columbia Drug Company. The opinion and the headnotes as originally prepared have been withdrawn, and the case is now decided upon the whole record in the light of the motion for rehearing.

The evidence authorized the findings that J. H. Reid died intestate in January, 1917, owning a retail drug-store, the liabilities of which exceeded its assets; that for about four years prior to the death of J. H. Reid, E. F. Broderick had managed the business under a power of attorney; that after the death of Reid, Broderick continued to manage the business for about two years, under an agreement with the deceased, and later with the heirs, that the business would eventually be given to a son of Broderick; that the purpose of continuing the business by Broderick was to free it from debt as far as possible, to the end that it might become of some value to his son; that such plan was later changed, the son deciding to become a physician and not to take over the drug-store; that then Broderick advised R. S. Reid, brother of the deceased, of his desire to be relieved of the burden of managing the business, and suggested that R. S. Reid become administrator; that R. S. Reid was duly appointed temporary administrator, and obtained from the ordinary a judgment authorizing him to continue

the business as a "going concern" for the purpose of making a sale thereof; that Reid was never appointed permanent administrator; that among the debts due by J. H. Reid just prior to his death, and while the business was managed by Broderick, was an amount due his bank; that it became necessary to secure funds with which to continue the business and to protect the credit of the concern at the bank, and accordingly R. S. Reid and E. F. Broderick became indorsers on a note or notes for the amount due the bank; that at the death of J. H. Reid this indebtedness existed, and thereafter the bank pressed its claim upon the indorsers, and thereupon a new note for $6,425.16 was executed as a renewal, Reid alone signing as indorser, Broderick having declined to do so; that Broderick retired from the management, and Reid began to direct and manage; and that after the management was turned over to Reid by Broderick, the former reduced the indebtedness on said note to $3200. Reid distributed, equally to the heirs, the insurance collected on the life of J. H. Reid, amounting, after payment of funeral expenses, to $2800, donating one half of the $700 due him to E. F. Broderick.

1. The general rule, varied in some States by statute, is well settled that an executor or administrator who carries on a business or trade on behalf of the estate without being empowered by law to do so becomes individually answerable for all debts contracted by him while so engaged. *Robert* v. *Tift,* 60 *Ga.* 566; *Stephens* v. *James,* 77 *Ga.* 139 (3 S. E. 160). In this State there are certain statutory exceptions, but they are not applicable to the present case. Civil Code (1910), § 4012. The above rule is especially applicable, forbidding a temporary administrator to carry on such business or trade. *Irvine* v. *Wiley,* 145 *Ga.* 867 (90 S. E. 69); *Henry* v. *Collins,* 155 *Ga.* 886, 891 (118 S. E. 729), and cit. Substantially all of the authorities, however, agree that there are exceptions to the foregoing rule, or perhaps it is more accurate to say there are instances where the rule does not apply. Compare *Hosher* v. *Fitzpatrick,* 146 *Ga.* 525 (6) (91 S. E. 780). The authorities cited by plaintiff in error in the course of the discussion of the subject mention such cases. See 11 R. C. L. 142, § 149; 24 C. J. 59, § 3. The case of Swaine *v.* Hemphill, 165 Mich. 561 (131 N. W. 68, 40 L. R. A. (N. S.) 201), involved facts constituting such an instance. The facts in some particulars are strik-

31

ingly like those in the present case. The business of the deceased was carried on, by the consent of the heirs, for a number of years. During some of these years the business was successful, and no complaint was made by the heirs. Afterwards, due to causes not within the control of the administrator, the business incurred losses, and then the heirs made complaints. Also, as in the present case, there were interested minors. The case was decided by the Supreme Court of Michigan, and was very fully considered. In the report in 40 L. R. A. (N. S.) are elaborate annotations in which authorities are collected, establishing the general rule and the exceptions. In the opinion is found a quotation from an opinion written by Mr. Justice Cooley in the case of Brown *v.* Forsche, 43 Mich. 492 (5 N. W. 1011), as follows: "Formal proceedings for the settlement of an estate are never necessary if all parties concerned can agree to dispense with them. [Citations.] Family arrangements for this purpose, it is said, are favorites of the law, and, when fairly made, are never allowed to be disturbed by the parties, or by any others for them. . . Such an arrangement may be made after an administrator is appointed, as well as before; and if the administrator is afterwards summoned to render his accounts, the court will accept as satisfactory, so far as it goes, the settlement the parties concerned have made." As to family agreements as a consideration for contracts of settlement, see *Belt* v. *Lazenby,* 126 *Ga.* 767 (3) (56 S. E. 81).

The same principle is laid down in Merkel's Estate, 131 Pa. 584 (18 Atl. 931), in which the principle applicable to the exception is applied to creditors. So far as it has been observed, these authorities in discussing the acts of administrators we assume had reference to permanent administrators. Since permanent administrators can not carry on the business or trade of the estate without first obtaining permission from the ordinary, it appears that in the absence of such permission the same rule applies as to temporary administrators. Certainly in this State temporary administrators have no such authority as a matter of law. If the temporary administrator in this case depended for his protection upon any authority under the law as administrator, it would necessarily follow that judgment would have been rendered against him. He claims authority, however, not under any such authority given him by law as administrator, but solely by reason of the con-

sent of all the interested parties, heirs at law and creditors. He went through the form of obtaining authority from the ordinary. If he had rested there, such effort would have availed him nothing. The order does tend to show his good faith in the matter. He asserts that all interested parties consented. If so, such authority does not rest on the appointment as temporary administrator, but rests upon the consent of all heirs and the conduct of creditors in extending credit to Reid as temporary administrator of the estate of J. H. Reid. The auditor found, under the evidence, that there was such consent and course of dealing by the creditors. These findings were approved by the judge of the superior court, and under the evidence we think the findings were authorized. For at least two years after the death of Dr. J. H. Reid, E. F. Broderick continued to carry on the business by consent of the parties, his power of attorney having expired with Dr. Reid's death. Broderick did not apply for or obtain appointment as administrator. Some or all of the creditors, from a time prior to the death of Dr. Reid until the bringing of this suit, were familiar with the condition of affairs and dealt with the estate. Invoices were made out in a manner tending to show that the credit was not to Reid individually, but to the estate. The auditor was authorized to find that the Columbia Drug Company knew all of the facts as to the authority of R. S. Reid and did not look to him. In such circumstances, in equity the drug company may be held to be estopped. The evidence supports the finding that the estate is liable, and not the defendant, Reid. Whether true as to all creditors is immaterial, since only the Columbia Drug Company is before this court complaining of the judgment rendered.

2. It is pointed out in the brief of plaintiff in error, Broderick, that the answer and cross-petition of Reid contains no prayer for a judgment in his favor for any amount on account of payments made by him on the note due the bank, and that the note itself evidences a debt not due by the estate of J. H. Reid. The answer and cross-petition was equitable in its character. It set out the facts indicated above, and contained at its conclusion a prayer for general relief. Under a general prayer the plaintiff may have such relief as is consistent with and entirely within the scope of the pleadings. *Peek* v. *Wright,* 65 *Ga.* 638; *Hickson* v. *Mobley,* 80 *Ga.* 314 (5 S. E. 495) ; *Copeland* v. *Cheney,* 116 *Ga.* 685, 687 (43 S. E. 59) ;

*Pound* v. *Smith,* 146 *Ga.* 431, at page 435 (91 S. E. 405) ; *Wimpee* v. *Burt,* 148 *Ga.* 418 (96 S. E. 993). In this instance the prayer for general relief, together with the facts alleged, was sufficient to authorize the finding. Moreover, the payments by R. S. Reid to the bank, though credited on a renewal note executed after the death of J. H. Reid, were really in extinguishment of the debt incurred before the death of the latter Reid, and constituted a liability of the estate.

3-5. The third, fourth, and fifth headnotes do not require elaboration.

6. Two of the heirs of J. H. Reid, who are parties in the case, are minors represented by their father as next friend. It is argued that they could not legally consent to the operation of the drugstore by R. S. Reid. Conceding this to be true, it would not, under the circumstances, alter the judgment. This is a proceeding in equity; and even if the maxim that parties coming into a court of equity must do equity is not applicable to these minors, nevertheless the evidence authorized the finding that the estate of J. H. Reid was bankrupt at the date of his death, for some time previous thereto, and continuously so thereafter; and that R. S. Reid did not take charge of the business for two years after the death of the intestate, during which time Broderick continued in charge. The auditor found that R. S. Reid had acted throughout in perfect good faith, that he received no remuneration whatever, either in property or money, but that he sustained a considerable financial loss by reason of the rendering of his services. These findings were authorized. In these circumstances the minors as heirs have not suffered any money loss by reason of the course pursued by R. S. Reid. See the reasoning in *Robert* v. *Tift,* 60 *Ga.* 566, and *Moore* v. *Lampkin,* 63 *Ga.* 748.

While the amount involved is not large, the litigation has been vigorous and extended. A receiver was appointed, and the case was referred to an auditor, who heard evidence introduced by all parties interested. The record evidences a painstaking hearing before the auditor and careful consideration. His findings were approved by the court below in their entirety. We have carefully examined the case, and find no error except as indicated in the fifth headnote. If there are other instances which would seem to indicate that a contrary finding should be made, they are unimportant and are

overshadowed by the necessity for bringing to an end the litigation before all of the assets are consumed by expenses, in which event general creditors would especially suffer. After a reconsideration of the case, we are again fully convinced that the ends of justice and equity require an affirmance of the judgment, with the direction given in the fifth headnote.

*Judgment affirmed, with direction. All the Justices concur.*