DEATON *v.* SWANSON.

No. 14678.   NOVEMBER 10, 1943.

*W. L. Nix* and *Alton G. Liles,* for plaintiff in error.
*Marvin A. Allison,* contra.

WYATT, Justice.   J. T. Swanson Jr. filed his petition against N. B. Deaton, an owner of adjacent land, alleging that Deaton was committing acts of willful trespass on plaintiff's property by cutting and removing timber therefrom.   Swanson prayed for injunction, damages, and equitable relief in general.   In his answer Deaton denied that he was guilty of trespassing and cutting timber on land of the plaintiff, and alleged that the timber cut by him was located on his own land.

The judge passed an order continuing a temporary restraining order in effect, and providing that the matter of the disputed line be referred to the proper district processioners, together with the county surveyor, and that they go upon the premises and mark

anew the disputed land line between the lands of plaintiff and defendant. The processioners, after a hearing, filed their report with the clerk of the superior court as provided by law, together with a plat marking out and establishing the line in dispute. Both plaintiff and defendant objected to the report of the processioners, each contending the true line to be different from that fixed by the processioners.. The jury found in favor of the plaintiff, and the defendant excepted to the overruling of his motion for new trial.

■ The first three special grounds of the motion for new trial are considered together, since they involve assignments of error on the admission in evidence of three deeds, over objections by the plaintiff in error. Two of these deeds, one from C. C. Burel, as administrator of Mary F. Burel, to the defendant in error, dated April 22, 1934, and one from J. G. Justice to M. F. Burel, dated November 11, 1892, contained the same description, as follows: "A certain tract or parcel of land situated in Gwinnett County, State of Georgia, described in a deed from Frances F. Appling to said J. G. Justice, and dated November 10, 1884, containing 45 acres of land, more or less." The description in the deed from Frances F. Appling to John G. Justice, dated November 10, 1884, referred to in the deeds described above, is as follows: "That tract or parcel of land situated, lying, and being in the County of Gwinnett, State of Georgia, on the waters of the Mulberry River, being a part of the Sullivan Survey, containing forty-five acres, more or less, adjoining the lands of Cain and Brown on the west, Joe Frasier on the South, Solomon Puckett on the east, and the Widow Phillips on the north." One common objection urged against the admission of these deeds in evidence was that the description of the property sought to be conveyed in the deeds was too indefinite, inadequate, and insufficient to convey title to any land, or to show their relation to the property in controversy. If a tract of land be described by reference to a more particular description in another deed, the instrument is prima facie good as a conveyance. *Crawford* v. *Verner*, 122 *Ga.* 814 (50 S. E. 958); *Sizemore* v. *Willis*, 130 *Ga.* 666, 669 (61 S. E. 536). A deed is sufficient to pass title, and will not be declared void for uncertainty of description, if the descriptive averments are certain, or if they afford a key by which the land can be definitely located by the aid of extrinsic evidence. See *Swint* v. *Swint*, 147 *Ga.* 467 (2) (94 S. E. 571); *Price* v. *Gross*, 148 *Ga.* 137 (2), 138 (96 S. E. 4); *Boyd* v.

*Sanders,* 148 *Ga.* 839 (98 S. E. 490) ; *Bibb County* v. *Elkan,* 184 *Ga.* 520 (8), 526 (192 S. E. 7) ; *Prudential Insurance Co.* v. *Hill,* 170 *Ga.* 600 (2) (153 S. E. 516) ; *Blumberg* v. *Nathan,* 190 *Ga.* 64 (8 S. E. 2d, 374). The first two deeds above described refer, for a more definite description of the property conveyed, to the deed from Appling to Justice, and the sufficiency of the descriptions in these deeds necessarily depend upon the sufficiency of the description in the Appling deed. The description in the Appling deed locates the property as being in Gwinnett County, Georgia. The number of acres is stated. Its boundaries are described by naming adjacent owners on the north, south, east, and west. If this description is sufficient (and we think it is), then the descriptions contained in the two subsequent deeds are sufficient. "A deed describing the land conveyed by setting forth that it is bounded on the north, east, south, and west by the lands of certain named owners and by certain described watercourses, and stating the number of acres contained, is neither vague nor uncertain in its description." *Morris* v. *Beckum,* 145 *Ga.* 562 (4) (89 S. E. 704). See *Swint* v. *Swint,* supra. Under the foregoing authorities, as against the objection of insufficiency of description, the deeds were properly admitted. And the evidence on the whole was sufficient to show the deeds related to the property in controversy.

There were additional objections to the deed from Appling to Justice, on the grounds, that it was not properly executed, in that it appeared that neither of the two witnesses was an official; that the place of execution was not shown; and that it was not identified as the deed referred to in the deed from Burel to Swanson. "A deed, for a description of the land conveyed, may refer to another deed or to a map; and the deed or map to which reference is thus made is considered as incorporated in the deed itself." *Talmadge* v. *Interstate B. & L. Asso.,* 105 *Ga.* 550, 554 (31 S. E. 618) ; *State* v. *Georgia Railway & Power Co.,* 141 *Ga.* 153 (2) (80 S. E. 657) ; *Tilley* v. *Malcolm,* 149 *Ga.* 514, 515 (101 S. E. 127). This rule would make the Appling deed admissible as a part of the deed from C. C. Burel, as administrator of Mary F. Burel, to Swanson, and also a part of the deed from J. G. Justice to M. F. Burel, both of which appear to have been properly recorded. The two deeds last mentioned also sufficiently identify the Appling deed; and there was no error in admitting it over the objections presented.

■ In ground 7 complaint is made that certain evidence of impeaching nature was admitted over objection "on the ground that the foundation had not been laid for the impeachment of the witness Miss Cook." This evidence appears to have been offered as impeaching testimony by disproving the facts to which the witness, Miss Cook, had testified. No foundation is required under such circumstances. Code, § 38-1802.

■ Ground 8 complains of the admission of certain testimony over the objection that it was hearsay, was impeaching, and no proper ground had been laid therefor. The following question was propounded to witness C. T. Jones: "After she testified about this stump that was mentioned by your father, I will ask you if after she testified if your father and Mr. Nix and Mr. Liles and myself and all the appraisers walked about sixty feet down there and your father stood over the place where he pointed out the old stump was." Answering, Jones stated, "He did, he said that's the reason they couldn't get started on the survey." Relatively to the objection that no foundation had been laid for impeaching testimony, what has been said in the foregoing division of this opinion is here applicable.

The evidence disclosed that the father of the witness was dead, and tended also to show that the father had known the property for many years and was in position to know the tradition concerning the ancient boundaries and landmarks. This evidence, under the circumstances, was not objectionable as hearsay. Code, § 38-313; *Moore* v. *McAfee,* 151 *Ga.* 270 (6) (106 S. E. 274).

■ In ground 9 error is assigned upon the admission of certain evidence of the same character as that considered in the preceding ground, over the objection that it was hearsay; and what is there said is controlling as to this ground.

■ In ground 10 exception was taken to a portion of the court's charge in outlining to the jury the contentions of the defendant. The court stated the defendant "says that he and his predecessors in title have been in the exclusive and peaceful possession of this land for eighteen years." It is contended that the charge in this respect was error, because (a) it did not fully and fairly submit the defendant's contention, since in his answer he alleged that he and his predecessors in title had been in such possession eighty years; and (b) that the contentions of the defendant were not

stated with equal fullness as were the contentions of the plaintiff. The court elsewhere charged: "You will have these papers out with you also, and you can and should read them for yourselves." The case having been tried upon objections to the return of processioners, the court properly charged the jury to the effect that they should determine the true boundary or dividing line between the two tracts of land in question. The jury were further instructed that, "Where actual possession has been had under a claim of right for more than seven years, such claim shall be respected, and the lines so marked as not to interfere with such possession." Under the circumstances the jury could not have been misled or confused by the apparent lapsus linguæ of the judge in stating eighteen years instead of eighty years, while reading from the defendant's answer, which the judge directed the jury to read. Neither is the charge subject to the further criticism that the defendant's contentions were not stated with equal fullness as those of the plaintiff. Upon examination of defendant's answer and the charge of the court, it appears that the court effectually read to the jury the answer in which the contentions of the defendant were fully set out.

■ The judge submitted in charge to the jury the rules of law applicable to the measure of damages where the defendant has been guilty of a willful trespass. This charge is excepted to in ground 11, as not being adjusted to the evidence, the defendant contending that there was no evidence showing the trespass, if committed, was willful, and that the evidence sustained the defendant's contention that he cut the timber by virtue of his ownership and possession thereof. There is no contention that the law as given in charge was incorrect. There was evidence upon which the jury could have based a finding to the effect that the plaintiff in error engaged in cutting the timber in question when he knew or should have known that he had crossed over a well-defined and established property line. The plaintiff testified, in part: "When I found out that Mr. Deaton was cutting over the line, I went to him and asked him not to cut it, and he told me he was going to cut it on through there if he lived; and he didn't quit after I asked him to; it was necessary to bring court orders against him to stop him." Evidence delivered by other witnesses was to the effect that Deaton had pointed out to the witnesses the boundary line between his land and

that of Swanson, and that he had recognized a dividing line that placed the timber, alleged to have been cut by Deaton, on the land of Swanson. The evidence authorized the charge complained of.

In ground 12 complaint is made because, after a verdict in the form of questions and answers had been returned, the judge instructed the jury to the effect that the answer to one of the questions was not as definite as it should be. He instructed the jury to make more definite the answer to the question, and said to them they might, if they saw fit, attach a plat to their verdict as a part of the answer to this question. He stated that they need not necessarily attach a plat, but that they should in some way make the answer more definite. When and during the time this instruction was being given, the judge held in his hand in view of the jury one of three plats that had been introduced in evidence, and being one that had been introduced by defendant in error. This was the plat the jury did attach to their verdict when they had retired and answered the question after this further instruction on the part of the judge. The assignment of error as to this occurrence is as follows: "Said charge as given was expressive of an opinion by the court as to which party should prevail, and that plaintiff should prevail, and was erroneous in that it expressed an opinion by the court." Three plats were introduced in evidence and all were out with the jury. The judge simply stated to the jury, in effect, that one of the plats could, if the jury saw fit to do so, be attached to their verdict. This necessarily carried the implication: provided either of the plats correctly described the line in dispute. Counsel for the plaintiff in error, in their brief, make use of the following language: "In making exceptions to the conduct of the court as is set out in this ground, we take the occasion to repeat that whatever the court may have done in this respect, it was done inadvertently and unintentionally by the court." We fail to see how the jury could have had a contrary impression. The judge expressly said to the jury that no plat at all need be attached, but that they could, if they saw fit, attach a plat. This meant any plat. The mere fact that the judge, while giving this instruction, inadvertently held one of the plats in his hand could under no theory, as we view it, amount to an expression of opinion.

The court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*