1. The court of ordinary has original and exclusive jurisdiction, in the first instance, of the probate of wills; and a court of equity in the exercise of its equity powers has no jurisdiction to enjoin the custodian of an alleged will from offering it for probate, or for any reason to decree cancellation of an alleged will on which no action has been taken by the court of ordinary. *Page 863 
(a) The rule that equity seeks to do complete justice will not bring into equitable jurisdiction matters of which another court has exclusive jurisdiction.
(b) Under the allegations of the petition, in which the petitioners sought to set aside an alleged will of their deceased mother, the sole remedy was in the court of ordinary. The court erred in overruling the general demurrers attacking the jurisdiction of the court of equity.
(c) The allegations by which one of the petitioners sought to have decreed in him title to two described lots of land of the estate of his deceased stepfather, and to have specific performance of an alleged contract entered into with such person during his lifetime, did not set forth a cause of action against the temporary administratrix or the wife of such intestate, neither of whom had any responsibility or authority as to the disposition of any part of the estate. The relief sought could be obtained only after the appointment of a permanent administrator by the court of ordinary; whereupon an action might be instituted in the superior court.
2. While it is settled law that a court of equity has concurrent jurisdiction with a court of ordinary in the administration of estates of deceased persons, in all cases where equitable interference is necessary for the full protection of the parties at interest, a receiver should not be appointed to take the assets out of the hands of legally appointed representatives, except in cases of manifest danger of loss or destruction of or material injury to the assets. No matter how strong the apparent equity of the complainant may be, if there be no necessity for a receivership the courts will not change the status until final decree.
3. The allegations of the petition, that the temporary administratrix of the estate of the deceased stepfather of the petitioners, sole legatees under a will of their deceased mother, was not collecting and preserving the assets of the intestate, but was permitting his surviving wife to deal with them as her own and to waste and squander them, did not show sufficient reason for appointment of a receiver, inasmuch as proper relief and protection might be had upon application to the court of ordinary, which has jurisdiction of the two estates. Accordingly, the court erred in appointing a receiver and in enjoining the defendants from interfering with the assets of the estates.
 Nos. 14671, 14672. NOVEMBER 11, 1943.
Fred W. Jordan, Frank H. Jordan, Howard T. Jordan, and Sam N. Jordan filed in the superior court a petition against Mrs. Mattie Sue Furr, Mrs. J. H. Dillard as temporary administratrix of the estate of James Mack Furr, and Frank H. Jordan as temporary administrator of the estate of Mrs. Cora Florine Furr, alleging as follows: The petitioners are the surviving children of Mrs. Cora Florine Furr, who died on or about October 4, 1942, a resident of Fulton County, Georgia, there being no children of the *Page 864 
deceased children of their mother. James Mack Furr, the husband of their mother, survived her, and he and the petitioners are the heirs at law of Mrs. Cora Florine Furr. On November 4, 1942, Frank H. Jordan was appointed temporary administrator of the estate of Mrs. Cora Florine Furr, qualified as such, and is now acting in that capacity. The mother of the petitioners and James Mack Furr were married for about thirty-eight years previously to her death. Each engaged in business, and each accumulated property and held the same as their joint property in common. Title to part of the real estate was taken in their joint names, and the rest was held in the name of James Mack Furr. At the time of her death Mrs. Furr was the owner of one half undivided interest in real estate described in exhibit A, which was attached to and made a part of the petition, and she is named as joint owner with James Mack Furr in the deeds to such property, which are recorded in the office of the clerk of the superior court of Fulton County. The mother owned also one undivided half interest in real estate described in exhibit B attached to and made a part of the petition, deeds to which were taken in the name of her husband, James Mack Furr, and are of record in the said clerk's office. At the time of her death Mrs. Furr owned certain personal property which is listed in exhibit C attached to and made a part of the petition.
On November 18, 1942, James Mack Furr filed in the court of ordinary of Fulton County a petition returnable to the January term, 1943, to probate in solemn form a will alleged to be the last will of Mrs. Cora Florine Furr, a copy of which is attached to and made a part of the petition as exhibit D. At the time she is alleged to have signed the document which has been offered for probate in solemn form as her last will and testament she was mentally incapacitated to make a will, in that she did not have sufficient strength of intellect or mentality to understand the nature of the purported will or its contents; there was no intention on her part to make a will and thereby dispose of her property to the exclusion of petitioners, her children; and the will is not the will of their mother, but the will of James Mack Furr, which he had her to execute for his benefit and favor, and which she signed because she was told to do so by him. She did not execute it freely and voluntarily, but was moved thereto by undue influence exercised *Page 865 
over her by James Mack Furr and by his divers practices upon her. She loved petitioners, and constantly told them and others that she wanted them to have her property at her death; and she did not know the contents of the purported will and that thereby she was giving her property to her husband to the exclusion of the petitioners, her children. After filing the will for probate James Mack Furr died on or about December 2, 1942. On or about November 28, 1942, a marital ceremony was performed before his death, whereby James Mack Furr and Mattie Sue Wilson went through the form of entering into a marriage contract. At that time he was a paralytic, in feeble health, mentally unbalanced, and totally incapacitated mentally to enter into a contract of marriage, and was so sick and weak that his death was and should have been expected at any moment; and he died about three days thereafter; and when the marriage ceremony was performed he was so sick that he had to be held up. Mattie Sue Wilson was approximately twenty-five years of age at the time the marriage ceremony was performed, and James Mack Furr was about sixty-five years of age. She knew that he was a paralytic, that he was seriously ill and likely to die at once, that he did not have mental capacity to enter into a valid marriage contract, that he had the reputation of being a man of means and of considerable property; and in order to get possession and control of his property and to defraud petitioners out of their mother's property, and to defraud Howard T. Jordan out of his rights in the property of James Mack Furr, hereinafter referred to, and with no intention of becoming an actual wife of Furr, but with the object of using said marriage ceremony only for the purpose of trying to obtain his property and that of the mother of petitioners, she fraudulently entered into the marriage ceremony about three days before he passed away. The pretended marriage was fraudulent, illegal, and void, because of the facts hereinbefore set out, and should be so adjudged and decreed in this case.
Howard T. Jordan, one of the petitioners, began living with and working for James Mack Furr, his stepfather, when he was thirteen years of age, and for about thirty-seven years continued to live with and work for him until his death; and they were very fond of and loved each other dearly. Furr always told him that he was going to will him all of his property. When Howard Jordan became of age, Furr agreed with him for Howard to live with and work for *Page 866 
him in and about Furr's business as though he was his child, and in consideration thereof promised to will Howard all of his property of every kind of which he should die possessed. Under this agreement Howard T. Jordan did not receive any wages for the work, although he spent his whole time working for Furr, but did receive a small weekly allowance for his personal expenses. In 1938 Howard T. Jordan married, and thereafter Furr allowed him $15 weekly for living expenses for himself and his wife. With such understanding that Furr would make a will giving him all of his property of which he should die possessed, Howard T. Jordan did work for him during the lifetime of Furr, and did work in and about his ice business and pool-room business, and all moneys earned in his work were turned over to and kept by Furr as his own. Furr did not make a will giving Howard T. Jordan all property of which he should die possessed; and so far as can be ascertained, he made no will whatever. The contract above described should be set up and established as a valid and binding contract and agreement enforceable against Furr's estate, and all moneys, properties, or effects of which Furr died possessed should be adjudged and decreed the moneys, property, and effects of Howard T. Jordan to the same extent as though he had been willed them by Furr. When Howard T. Jordan married, by agreement with Furr he was to move with his wife from the home of Furr into a home of their own. He selected a farm which he proposed to buy, told Furr of such selection, and gave him $900 with which to buy it for him; but when Furr saw the farm he did not like it, and bought instead for him a ten-acre farm on Second Avenue in DeKalb County, Georgia, for which he paid $1500, and Howard T. Jordan gave him the difference of $600 on the purchase-price. When Furr was asked for the deeds to said property he informed Howard T. Jordan that he had taken the deeds in his own name and would hold title for him. On April 10, 1942, Furr sold the property to Lawrence Holtsinger for $3500; and when Furr told Howard T. Jordan about it Jordan demanded that Furr pay him therefor, and Furr then and there agreed that he would give Jordan $1000 cash and the two houses and lots described in exhibit E attached to the petition. In compliance with said agreement Furr did pay him $200 in cash and gave him a 1940 Chevrolet truck in payment of the $1000 cash payment agreed on, and instructed his attorney to *Page 867 
draw deeds to the houses and lots to transfer them to Jordan; but Furr died before the deeds were made. The said agreement should be set up and established as a valid and binding contract and agreement enforceable against the estate of James Mack Furr, and said houses and lots described in exhibit E should be adjudged and decreed to be the property of Howard T. Jordan.
On December 8, 1942, Mrs. J. H. Dillard applied for and obtained temporary letters of administration of the estate of James Mack Furr, a copy of said application and appointment and all entries thereon being attached as exhibit F and made a part of the petition. Mattie Sue Wilson, claiming to be the widow and sole heir of Furr, selected and procured said appointment of Mrs. J. H. Dillard, who is secretary for her attorney. At the time of his death Furr had in his immediate possession a large amount of money and all of the personal property of petitioners' mother's estate, as well as that belonging to himself, amounting, as alleged on information and belief, to $1500. Furr did not keep a bank account, but kept all moneys and valuables about his person, in his home, or in a safe in his home. Mattie Sue Wilson is now living in the home formerly occupied by Furr and the mother of petitioners before their deaths, and all of the money and a great part of the personal property of both of their estates are in her possession and she is totally insolvent and is using the moneys and property of said estate as though they were her own. Mrs. Dillard, as administratrix of the estate of Furr, has not taken possession of the money and personal property of the estate, has made no bona fide effort to do so, but is permitting Mattie Sue Wilson to keep possession of and use the same. Mattie Sue Wilson was not the sole heir or legal widow of Furr, and had no legal right to select Mrs. Dillard as administratrix. The assets of both estates are intermingled, and Mattie Sue Wilson is wasting and squandering the assets of both estates and the income from property belonging thereto and to Howard T. Jordan, retaining and using the same as her own and for herself, and is operating the pool-room.
Petitioners have no adequate remedy at law to protect their rights in the matters here set out, and a court of equity should intervene in their behalf and require all persons interested to set up their respective claims and contentions in this proceeding, so that this court can determine and adjudicate all of said matters. *Page 868 
They pray that this court set up, establish, adjudicate, and decree what constitutes the estate of their mother, Mrs. Cora Florine Furr, and who are her heirs or legatees; what constitutes the estate of James Mack Furr, and who are his heirs or legatees; whether or not title to the two houses and lots described in exhibit E is in Howard T. Jordan, and what are his rights in said property; whether or not the alleged contract of Howard T. Jordan and James Mack Furr respecting the willing by Furr of all of his property to Jordan should be set up, adjudged, established, decreed, and enforced against the estate of Furr; whether or not Mattie Sue Wilson is the legal widow of James Mack Furr, and adjudicate her rights, if any, in his estate; and adjudicate each and every matter arising under the petition herein set out, or that may be raised by the pleadings in the case. For a court of equity to take jurisdiction of the matters herein set out will prevent a multiplicity of suits, and it will thereby be able to adjudicate all matters in one suit. The court should appoint a receiver to take charge of all moneys, properties, and effects of each of said estates, and of the properties described in Exhibit E and alleged to be the property of Howard T. Jordan; and said receiver should be authorized and directed to insure and protect said properties and assets, to collect rents and any and all income from the property, and to hold the same subject to the further order of the court. Mattie Sue Wilson should be temporarily restrained and permanently enjoined from interfering with any of the assets of said estates or with any of the property referred to in the petition or the income arising therefrom. The application to probate the pretended or reputed will should be enjoined, and any right thereunder should be set up in this proceeding; and all parties hereto or who may hereafter become parties hereto, or any one for them or in their behalf, should be restrained and enjoined from further prosecuting the petition to probate said will in the court of ordinary. At the time of his death James Mack Furr had an insurance policy on his life for $800, in which his deceased wife, Cora Florine Furr, was named as beneficiary, which policy is an asset of her estate; and this matter should be determined in this action.
Mattie Sue Wilson (Mrs. James Mack Furr), Mrs. J. H. Dillard as temporary administratrix of the estate of James Mack Furr, deceased, and Frank H. Jordan as temporary administrator of the *Page 869 
estate of Cora Florine Furr, deceased, are named as defendants. They reside in Fulton County, and the superior court has jurisdiction of them and of the subject-matter of this suit. The prayers are: (a) for process; (b) that the court determine and adjudicate by proper judgment and decree the rights of the various parties to the litigation in the matters herein referred to; (c) that the pretended will of Cora Florine Furr be held void and of no force and effect, and that petitioners and the estate of James Mack Furr be decreed to have inherited each one fifth interest in the estate of Cora Florine Furr; (d) that the court determine and decree what constitutes the estate of Cora Florine Furr; (e) that the court determine and decree what constitutes the estate of James Mack Furr; (f) that the marriage ceremony entered into between Mattie Sue Wilson and James Mack Furr be declared void; (g) that the title held by James Mack Furr at the time of his death to the property described in exhibit E be decreed in Howard T. Jordan; (h) that the contract between Howard T. Jordan and James Mack Furr, wherein Furr agreed to will to Howard T. Jordan all of the property or effects of which he died in possession, be held a binding contract against the estate of James Mack Furr and enforceable against it, and said property be decreed in Howard T. Jordan as though he had inherited it from James Mack Furr; (i) that a temporary and permanent receiver be appointed as is provided by law; (j) that a temporary restraining order and permanent injunction be granted against Mattie Sue Wilson and Mrs. J. H. Dillard in the matter shown in the petition; (k) that the court enter a decree fully adjudicating all the matters set out in the petition, and grant petitioners such other and further judgment and decree as may seem meet and proper in the premises.
Mrs. Mattie Sue Wilson (Mrs. James Mack Furr), and Mrs. J. H. Dillard as temporary administratrix of the estate of James Mack Furr, filed general and special demurrers, the substance of which is to the effect that no cause of action is set forth against either defendant; that petitioners have an adequate remedy at law, the court of ordinary alone having jurisdiction to probate the alleged will of Mrs. Cora Florine Furr; that petitioners as her children have no right as to her estate until the will is set aside; that they have an ample legal remedy by caveat to the probate of the will; that it affirmatively appears from the petition that the court *Page 870 
of ordinary alone has jurisdiction to try the issue of devisavit vel non as to the will, that the allegations do not show a case where equity will take the estate of James Mack Furr from the personal representative and turn it over to a receiver, it affirmatively appearing that the administratrix has qualified and given adequate bond, and there being an adequate remedy provided by law whereby any non-action on her part in collecting the estate, etc., may be complained of to the court of ordinary which appointed the defendant representative and to which court she is amenable. The demurrers also set up misjoinder of parties and causes of action, that the petition was multifarious, and that the plaintiff Frank H. Jordan, as a child of Cora Florine Furr, can not sue Frank H. Jordan as temporary administrator of her estate.
The defendants answered, denying the material allegations of the petition, and alleging that the defendant administratrix was properly attempting to collect the assets of the estate of James Mack Furr when Harry McCowen was appointed temporary receiver. An amendment to the answer of Mrs. Furr (Mrs. Mattie Sue Wilson) alleged that she as sole heir of James Mack Furr, who under the will of Mrs. Cora Florine Furr was sole beneficiary, selected Mrs. J. H. Dillard as administratrix with the will annexed of Mrs. Cora Florine Furr, her deceased husband, James Mack Furr, having been named executor of such will, and having died after offering the same for probate in solemn form; and that Mrs. Dillard has filed in the court of ordinary an application for letters cum testamento annexo.
At the time the petition was filed the court temporarily restrained the defendants from probating the will and made an exparte appointment of a receiver. The application for temporary receiver was heard before one of the judges of the superior court, and at the same time the court considered the general and special demurrers to the petition. After hearing evidence the ex parte appointment of a temporary receiver was made permanent, and the defendants were enjoined as prayed. Afterward the court overruled the defendants' demurrers. The defendants excepted.
The matters complained of are before this court by two bills of exceptions, error being assigned in case 14672 on the judgment appointing a permanent receiver and enjoining the defendants as prayed, and error being assigned in case 14671 on the judgment overruling the demurrers. *Page 871 
1. The Code declares: "Courts of ordinary have authority to exercise original, exclusive, and general jurisdiction of the following subject-matters: Probate of wills." § 24-1901 (1). "The court of ordinary shall have exclusive jurisdiction over the probate of wills. The residence of testator at his death shall give jurisdiction to the ordinary of that county." § 113-603. In Israel v. Wolf, 100 Ga. 339
(28 S.E. 109), it was ruled: "It being within the power of the ordinary of any county to compel the filing in his office of any paper purporting to be the last will and testament of a deceased person who at the time of his death resided in such county, and the court of ordinary having original and exclusive jurisdiction in the first instance of the probate of all wills, the superior court in the exercise of its equity powers has no jurisdiction to enjoin the custodian of an alleged will from offering it for probate; nor to decree, for any reason, the cancellation of an alleged will upon which no action has ever been taken by the court of ordinary." In the opinion it was said: "The remedy of the petitioner to have the question of the validity of the alleged will decided is adequate and complete in the court of ordinary. That is the only court that can in the first instance judicially determine whether or not any given paper is the true will of the person by whom it purports to have been executed as such. Jurisdiction in cases of fraud in the execution of wills is distinctly taken away by the code from courts of equity in this State. Civil Code, § 4024." That section (now § 37-701) provides as follows: "In all cases of fraud (except fraud in the execution of a will) equity has concurrent jurisdiction with the law." As was said in Benton v. Turk, 188 Ga. 710, 723
(4 S.E.2d 580): "The rule that equity seeks always to do complete justice will not bring into equitable jurisdiction matters over which another court has exclusive jurisdiction." For other cases to the effect that the court of ordinary alone has jurisdiction in the first instance to determine as to the factum of a will, seeAdams v. Johnson, 129 Ga. 611 (59 S.E. 269); Field v.Brantley, 139 Ga. 437 (77 S.E. 559); Turner v. Holbrook,145 Ga. 603 (89 S.E. 700); Elliot v. Johnson, 178 Ga. 384
(173 S.E. 399). No construction of the will is here involved, the only effort made by the petitioners as a class being to *Page 872 
set aside the will on the ground that it was fraudulently induced by the stepfather, James Mack Furr, at a time when the testatrix was lacking in testamentary capacity. Under the above authorities they are relegated to the court of ordinary, where they may have an administrator cum testamento annexo appointed in the place of the deceased nominated executor, and thus provide a proper defendant to contest the issue which would arise by the filing of a caveat to the will, the application to probate which is now pending in the court of ordinary. "The nominated executor and propounder of a will is a legal party on behalf of the legatees, to conduct the litigation involved in a caveat to the will, from the beginning to a final adjudication." Lucas v. Lucas,30 Ga. 191 (4) (76 Am. D. 642); Yeates v. Yeates, 162 Ga. 153
(2-a) (132 S.E. 768). The nominated executor under the will of Mrs. Cora Florine Furr having died, his successor, an administrator cum testamento annexo, would necessarily be the proper defendant in litigation involved in a caveat to the will, which if sustained would establish intestacy as to the property owned by Mrs. Furr at the time of her death. Thus would be accomplished all that is sought from the court of equity in the present proceeding as to setting aside the will to enable to children to inherit their proper share in the estate as heirs at law. It follows that the court erred in overruling the grounds of demurrer in the respects above discussed. Slade v. Street,27 Ga. 1, 21, cited and relied on by the defendants in error as to the court of equity having concurrent jurisdiction with the court of ordinary to adjudicate the alleged invalidity of the will, is not authority for holding that equity has jurisdiction here. In that case the court of ordinary sustained a caveat to an application to probate a will. Pending an appeal to the superior court the court-house of the county, together with all the papers in the cause, except perhaps the will, was burned. An administrator of the estate of an infant devisee under the will filed a petition in equity, alleging that the nominated executor had for stated reasons desisted from prosecuting the appeal, and sought to have set aside, the judgment of the court of ordinary rejecting the paper offered as a will, and to establish a copy of the paper as a will, and to cause revocation of letters of administration granted after the caveat was sustained. It was held that the court of equity had no jurisdiction, that a copy of the alleged will could as well be established *Page 873 
in the court of ordinary; and in respect to whether or not a court of equity could take jurisdiction equally with the court of ordinary in the matter of the probate of a will it was ruled: "If a court of equity has jurisdiction of any case of will probate, the case can be only one in which the probate is for some reason not attainable in the court of ordinary." (Italics ours.) No other case cited by the defendants in error is authority for a court of equity to take jurisdiction of the matter of setting aside the alleged will of Mrs. Cora Florine Furr, under the allegations of the petition.
But it is urged, that, under the well-established rule that an action will not be dismissed if any portion of the petition sets forth. a cause of action, the court of equity should retain jurisdiction of the claim of Howard T. Jordan, one of the petitioning children, that he is equitably entitled to the two described lots of land which James Mack Furr was obligated to deed to him as the equivalent of the balance of the sale price of certain realty which belonged to him and which proceeds had been retained by Furr, and should retain jurisdiction of the question of enforcing the contract which, as alleged, was entered into between him and Furr, whereby for services rendered Furr during his lifetime it was agreed that he would will all of his property to Howard T. Jordan. This leads to an inquiry whether or not a cause of action in these respects is set out in the petition against any of the defendants. The defendant Frank H. Jordan is shown to be temporary administrator of the estate of Cora Florine Furr. Certainly no relief is sought against him in respect to the claims above mentioned. Mrs. Mattie Sue Wilson, the second Mrs. James Mack Furr, occupies no position as a defendant except in her individual capacity. If, as to title to the two lots of land above mentioned or as to all of the property of James Mack Furr sought to be acquired by Howard T. Jordan for reason stated in the petition, a decree of the court of equity could operate so as to bind the estate of Furr, it is only upon Mrs. J. H. Dillard, the temporary administratrix of such estate. Is a cause of action set forth against her? By the Code, § 113-1207, it is declared that the ordinary may at any time grant temporary letters of administration upon any unrepresented estate, for the purpose of collecting and taking care of the effects of the deceased. "Effects" refers, of course, to personal property. Banks *Page 874 
v. Walker, 112 Ga. 542, 544 (37 S.E. 866). The Code requires that a bond be given for double the amount of the personal property belonging to the estate. § 113-1221. It declares that a temporary administrator may sue for the collection of debts or personal property of the estate. § 113-151. It provides that temporary letters of administration may be granted pending an issue of devisavit vel non, unless the will has already been admitted to probate in common form and letters testamentary have been issued. § 113-1208. It will be seen from this summary of the Code provisions that the appointment of a temporary administrator of an estate is for limited purposes, where there is an unrepresented estate and pending an issue of devisavit vel non; and that it is contemplated that there be a permanent administration for disposition of the estate. See Chattanooga c.Ry. Co. v. Morrison, 140 Ga. 769 (79 S.E. 903). InLangford v. Langford, 82 Ga. 202 (8 S.E. 76), it was held that a temporary administrator had no right to distribute any portion of the intestate's estate, or to agree to sell and distribute the real property, and could not interfere with the realty for any purpose except to preserve and protect it. SeeEwing v. Moses, 50 Ga. 264; Mason v. Atlanta Fire Co.,70 Ga. 604, 607, 608 (48 Am. R. 585); Barfield v. Hartley,108 Ga. 435 (33 S.E. 1010). He can not institute an action to recover land alleged to belong to the estate and held adversely thereto. Banks v. Walker, supra; Ward v. McDonald,135 Ga. 515 (69 S.E. 817). He takes no interest in the land, and can not consent for a suit to be brought against the estate.Doris v. Story, 122 Ga. 611 (50 S.E. 348); Babson v.McEachin, 147 Ga. 143 (93 S.E. 292). He can neither pay debts nor distribute an estate to heirs. Broderick v. Reid,164 Ga. 474 (139 S.E. 18). He is not a proper party to defend in an action of ejectment. Grooms v. Mixon, 150 Ga. 335
(103 S.E. 845). In Banks v. Walker, supra, it was said: "We are clearly of the opinion that the temporary administratrix had no power or authority to institute and maintain the suit for the realty, and that a judgment against her in that suit can not bind the heirs, devisees, and legatees of the decedent." Assuming that the petition here would, under its allegations, set forth a cause of action against a permanent administrator of the estate of J. M. Furr, in favor of Howard T. Jordan, no such defendant appears; and since under the authorities cited above the temporary administratrix *Page 875 
is wholly without authority as to the disposition of the estate, certainly no decree of the court of equity putting title in Howard T. Jordan as to any of the property of the estate of James Mack Furr would operate against the temporary administratrix, or bind that estate in the absence of a permanent administrator as defendant. It necessarily follows that no cause of action is set forth against the temporary administratrix, Mrs. J. H. Dillard, or Mrs. Mattie Sue Wilson Furr individually.
The relief which Howard T. Jordan seeks for himself, as detached from the claim of his brothers, can be had only after the appointment of a permanent administrator of the estate of James Mack Furr in the court of ordinary, following which he may institute an action in the superior court for the adjudication of his contentions as to having title to the two described lots of land decreed to be in him, and as to the enforcement of the contract which he alleges was entered into with James Mack Furr, whereby Furr was to will to him all of his property, the quality of which depends upon the outcome of the litigation as to the alleged invalid will of Mrs. Cora Florine Furr. The court erred in overruling the demurrer of Mrs. J. H. Dillard as administratrix, and of Mrs. Mattie Sue Wilson Furr individually, in the respects dealt with above.
2. Since under the above ruling the proceeding to set aside the will of Mrs. Cora Florine Furr fails in the court of equity, and since the separate claim of Howard T. Jordan constitutes no cause of action against Mrs. J. H. Dillard or Mrs. Mattie Sue Wilson, the second Mrs. James Mack Furr, was the appointment of a receiver error? It is alleged in the petition that the administratrix has not taken possession of the moneys and personal effects of the estate of James Mack Furr, but is permitting Mrs. Mattie Sue Wilson Furr to keep possession and use of them, and that she is wasting and using them as her own, squandering the personal property of his estate and of Mrs. Cora Florine Furr's estate, the personal property of which latter estate Furr had in his possession at the time of his death; and that she is totally insolvent. It is not alleged that the ordinary did not require bond from Mrs. Dillard; and in these circumstances it will be presumed that she is acting under a bond sufficient to protect all concerned. Collins v. Carr,112 Ga. 868 (2) (38 S.E. 346). If the bond is not sufficient to protect any interested party, the ordinary has authority, upon *Page 876 
proper application, to increase the bond, revoke the letters of administration, or pass such other order as may in his judgment be expedient under the circumstances of the case. Code, § 113-1229. An ample remedy is thus afforded against loss or waste. It is expressly enjoined in the Code that except in clear and urgent cases a receivership should not be resorted to. § 55-303. "Equity will not interfere with the regular administration of estates, except upon the application of the representative, either, first for construction and direction, second for marshaling the assets; or upon application of any person interested in the estate where there is danger of loss or other injury to his interests." § 37-403. Only the last-named contingency is material here. "To authorize such interference the facts must very clearly show there is a good reason for so doing." Butler v. Floyd, 184 Ga. 447 (191 S.E. 460), and cit. While it is settled law that a court of equity has concurrent jurisdiction with the court of ordinary in the administration of estates of deceased persons in all cases where equitable interference is necessary for the full protection of the parties at interest, a receiver should not be appointed to take the assets out of the hands of legally appointed representatives except in cases of manifest danger of loss or destruction of or material injury to the assets. No matter how strong the apparent equity of the complainant may be, if there is no necessity for a receivership the courts will not change the status until final decree. West v. Mercer, 130 Ga. 357, 360
(60 S.E. 859). See Beecher v. Carter, 189 Ga. 234, 244
(5 S.E.2d 648); Astin v. Carden, 194 Ga. 758, 765
(22 S.E.2d 481). The estates of Cora Florine Furr and James Mack Furr are now under the jurisdiction of the court of ordinary, and by application to that court adequate protection and redress may be obtained in the manner hereinbefore set out. Under the allegations of the petition no sufficient case is presented for appointment of a receiver. The court erred in making the receivership permanent, and in enjoining the defendants as prayed.
In the disposition we have made of the two cases, it is unnecessary to pass on the special demurrer as to misjoinder of parties and of causes of action, or to deal with the question of setting aside the alleged void marriage between James Mack Furr and Mrs. Mattie Sue Wilson.
Judgments reversed. All the Justices concur.
 *Page 1