S97A0570. RESSEAU v. BLAND et al.
(491 SE2d 809)

HINES, Justice.

This is a challenge to the judgment entered on a plaintiffs' verdict in an action to quiet title to real property in Putnam County. For the reasons which follow, we affirm.

In 1901, Lucy Williams executed deeds conveying approximately 100 acres of real property in Putnam County to her four sons, Jackson Williams, Jr., Oliver Williams, William Williams, and Peter Williams. The deed to Peter gave to him and his heirs and assigns a tract of land described as "forty-two acres, more or less" and "where said Peter Williams now lives." Peter was married several times and his marriage to Daphne Mathis produced nine children. After Daphne's death, Peter, in 1917, married Narsis Bland who bore him a son and a daughter. Peter died intestate in 1955. Narsis survived him by about 20 years and died testate. Narsis' daughter and Peter's stepdaughter, Carrie Mae Bland, became the executrix of her mother's estate as provided under Narsis' last will and testament. The will devised to Narsis' children by Peter her stated "one-twelfth (1/12) interest" in "approximately one hundred (100) acres known as the Peter Williams homeplace and forty (40) acres known as the Rice [P]lace located in Putnam County."

In 1993, nearly 40 years after Peter Williams' death, his grandson Adolphus Williams, Jr. was appointed temporary administrator of his estate. That year, Adolphus Williams, Jr. and Carrie Mae Bland on behalf of the estates of Peter Williams, Daphne Mathis Williams, and Narsis Bland Williams brought the present action to establish fee simple title to property, which included portions variously referred to, among other things, as the Peter Williams Place, the Rice Place, and the Skinner Place. The asserted interest was based on the 1901 deed from Lucy Williams to Peter and on a claim of

ownership by prescription because of Peter Williams and his descendants having actually and continually possessed, used and paid taxes on the property for nearly 100 years. The amended petition named as defendant T. H. Resseau, Jr., who contended that the interest of Peter Williams' heirs was limited to 42 acres. Resseau claimed title to approximately 58.72 acres by virtue of his nonjudicial foreclosure on parcels on which he held a 1992 deed to secure debt stemming from a loan to Jim Dodson.[1]

At trial, plaintiffs tendered into evidence a certified copy of a 1976 order of the Superior Court of Putnam County which specifically referenced the conveyance through which Resseau contended Dodson obtained title to the parcels. The order effectively divested Dodson of title to the "Skinner Place," returning it to members of the Williams family. Further, the Chief Tax Appraiser for Putnam County testified that the county records indicated that the tax notices for what was described as 140 acres of property had gone to Adolphus Williams since 1974, and that the official tax maps showed no division within the disputed property. Finally, plaintiffs offered testimony that since the turn of the century, Peter Williams and his many heirs and descendants farmed, used or paid taxes on the parcels deeded by Lucy Williams to her sons as well as on surrounding land, far exceeding the 42 acres expressly mentioned in the deed to Peter Williams. The court entered judgment on the jury award to plaintiffs of the acreage specified in the 1901 deed to Peter Williams as well as the disputed 58.72 acres.

1. Resseau challenges Adolphus Williams, Jr.'s authority to bring the suit[2] and contends that the trial court erred in refusing to dismiss the complaint on the basis that the action was not prosecuted by the real parties in interest. He further asserts that the court erred in failing to require that all known heirs of Peter Williams be joined as party plaintiffs.

It is true that the authority of a temporary administrator is subject to limitation, including with regard to the recovery of realty for the estate. See OCGA § 53-7-4; *Deller v. Smith*, 250 Ga. 157 (296 SE2d 49) (1982). However, as the duties of a temporary administrator are largely "preservative," the administrator's authority does allow dealings with the real property in the estate in order to preserve it. *Deller*, supra at 160-161; *Furr v. Jordan*, 196 Ga. 862, 874 (1) (27 SE2d 861) (1943). Even accepting, without deciding, that bringing the present action to quiet title exceeded merely preserving

---

[1] The original petition also named Dodson as a party defendant, but subsequently he was voluntarily dismissed without prejudice from the action.

[2] There is no challenge regarding the standing of Carrie Mae Bland as executrix of her mother's estate.

the land holdings in Peter Williams' estate, Adolphus Williams, Jr. had standing to take action to quiet title to the property as a potential heir of Peter Williams.[3]

Nor was the suit subject to dismissal for nonjoinder. The Quiet Title Act of 1966 was created to provide an efficient and effective way to adjudicate disputed title claims even in situations of title irregularities of many years standing. As such, it contemplates the problems created in identifying possible claimants, and permits an action to be brought by *any person with a claim of interest* in the land in question. OCGA § 23-3-61; *Smith v. Ga. Kaolin Co.*, 264 Ga. 755, 756 (2) (449 SE2d 85) (1994). It does not require that all potentially interested persons, adverse or otherwise, be joined as parties to the suit, but only that the petitioner provide descriptions of adverse claims and names and addresses of possible adverse claimants of which petitioner has actual or constructive notice, which was done here.[4] OCGA § 23-3-62 (b), (c). Moreover, the court appointed a guardian ad litem in accordance with OCGA § 23-3-65 (d) to represent any persons, unknown or unascertained, who might have an interest in the property.

2. Resseau next challenges Carrie Mae Bland's testimony about a rock foundation on the disputed property being the location of the Williams family home on the basis that it was inadmissible hearsay. However, the fact that Bland may have first observed the homeplace as a young child of five does not preclude her personal knowledge about its existence and site on the property. Moreover, even if the testimony was hearsay based on what she was told by Peter Williams, it was admissible as competent evidence of an ancient landmark or private boundary within the scope of OCGA § 24-3-9. *Deaton v. Swanson*, 196 Ga. 833, 837 (3) (28 SE2d 126) (1943). See also *Banks v. Myrick*, 149 Ga. App. 252 (253 SE2d 873) (1979); *Waddell v. Cole*, 138 Ga. App. 15 (2) (225 SE2d 491) (1976). Compare *City of Marietta v. Glover*, 225 Ga. 265 (167 SE2d 649) (1969).

3. Resseau likewise fails in his contentions that the trial court erred in allowing inadmissible hearsay when the Chief Tax Appraiser was permitted to testify about the acreage depicted on aerial photographs used as county tax plats and the plats were admitted into evidence. The fact that the property lines and other information on the plats were generated by an outside source, and

---

[3] The record does not disclose with certainty the disposition of Adolphus Williams' intestate share of Peter Williams' estate, and therefore, the interest of Adolphus Williams, Jr. However, it is noted that in the hearing on Resseau's motion to dismiss, Resseau acknowledged Adolphus Williams, Jr.'s individual interest in the property as a grandson of Peter Williams.

[4] Considering the possibility of adverse claims among the Williams family members, plaintiffs furnished, at the court's direction, a list of Peter Williams' known heirs at law.

thus, constituted hearsay might well preclude the plats as presumptive evidence under OCGA § 36-7-12. However, the plats were not precluded as a basis of the appraiser's expert opinion because the presence of hearsay in such circumstance does not mandate exclusion but instead goes to the weight to be accorded the evidence. *Cheek v. Wainwright*, 246 Ga. 171, 174 (3) (269 SE2d 443) (1980). Moreover, the court cautioned the jury that it was not to consider the tax maps as evidence of ownership of the depicted tracts but only as evidence of the county tax records.

4. Finally, the documentary evidence along with the collective testimony of Carrie Mae Bland, Adolphus Williams, Jr., and their neighbors, sufficiently showed the extent of actual possession of the disputed land by the Williams family to withstand Resseau's motion for a directed verdict on the issue of title by prescription. See OCGA § 44-5-161.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., who concurs in the judgment only as to Division 3, and Thompson, J., who concurs in the judgment only as to Division 1.*

DECIDED OCTOBER 14, 1997 —
RECONSIDERATION DENIED NOVEMBER 14, 1997.

*Martin L. Fierman,* for appellant.
*Huskins & Huskins, Donald W. Huskins,* for appellees.