## A02A0295. FORRESTER v. THE STATE.
(565 SE2d 825)

SMITH, Presiding Judge.

Corey Forrester was convicted of trafficking in cocaine and criminal solicitation to commit trafficking in cocaine. Following the denial of his motion for new trial, Forrester filed this appeal in which he asserts that the trial court erred by denying his motion in limine and motion for mistrial. He also challenges the sufficiency of the evidence and claims he was denied effective assistance of counsel at trial. Because we find no merit in these contentions, we affirm.

The evidence, on appeal, must be considered in a light most favorable to the verdict, and Forrester no longer enjoys the presumption of innocence. *Lawrence v. State*, 238 Ga. App. 102 (517 SE2d 822) (1999). When so considered, the evidence established that while working undercover, Investigator Duane Fulcher made arrangements to meet Karteau Jenkins at a specified gas station to purchase five ounces of cocaine for approximately $4,000. Jenkins agreed that each ounce would be individually packaged and that the final price would be $4,050. At the agreed-to time and place, Forrester was driving Jenkins's blue Cadillac and Jenkins was his passenger. Forrester, whom Fulcher knew by sight, motioned him over to the car, saying, "Come on over, come on over here." Forrester wanted him "to get into the vehicle and to do the transaction in motion," but Fulcher refused. When Forrester insisted that "we will do it like this or we are not going to do it at all," Fulcher balked. Forrester drove off followed by a surveillance team. About five minutes later, Fulcher called Jenkins who suggested they meet nearby at another gas station. Instead, Fulcher proceeded to magistrate court to obtain warrants to arrest both Forrester and Jenkins.

Armed with the warrants, a strike force proceeded to the house that Forrester and Jenkins had left just before the aborted drug transaction. Detective Ubaldo Rios, who had kept the house under surveillance that night, testified that he observed the same blue Cadillac return after about 30 minutes. When the strike force arrived at the house, Jenkins's car was parked in the driveway. Fulcher, Sergeant Michael Williams, and Detective Rios secured the perimeter of the house. At the back of the house, they could see a black male, whom Fulcher and Williams identified as Forrester, dumping something into the kitchen sink. Williams watched Forrester emptying gallon bags of some type of substance into the sink area while the strike force was beating on the front door. Williams saw Forrester emptying bags into the sink area using a spoon or a fork or some object in his right hand. Fulcher also testified that he could see Forrester handling a plastic bag and dumping something into the sink.

When the strike force gained entry, only two persons were inside the house, Forrester and a woman named Angelia Huff. Rios field tested the white powdered substance in the kitchen sink and determined the powder was cocaine. On the kitchen counter, Rios noticed an off-white residue on some scales and baggies typically used to package cocaine. Inside an open kitchen drawer was an off-white cake-like substance, which Rios testified that he "knew to be crack cocaine." To Rios, "[i]t was obvious there was . . . destruction of evidence being done at that location." Detective S. J. Rainey then procured a warrant to search the house.

While executing the search warrant, investigators noted a dish, fork, and spoon with a white powered residue, a glass pot on the stove with a liquid that tested positive for cocaine, two sets of digital scales, and clear plastic bags. Inside the kitchen cabinets, an investigator found several bags of suspected crack cocaine and three individual bags of packages of cocaine. In a kitchen drawer, a bag of powder was found. They also found eight loaded handguns, $10,188 in cash, a bulletproof vest, and walkie-talkies. Although Jenkins's name appeared on the lease, personal papers belonging to Forrester were found upstairs in the master bedroom, along with the bulletproof vest, four of the guns, and some of the cash. The personal papers were court documents from a criminal case in which Forrester had been the defendant. The papers were admitted in evidence over objection as proof that Forrester was living at that location.

Expert testimony established the purity and weight of the cocaine confiscated at the house. The cocaine in one package seized there weighed 113 grams and had a purity of 86.7 percent. Detective M. T. Lewis, part of the surveillance team at the Texaco, described what he saw and heard while listening to Fulcher, who was wearing a recording device. Lewis testified that "[Forrester and Jenkins] called one of the undercover detectives and said, 'you come over and get in our car and we will go — we will ride around and do a deal.'"

1. Claiming that the State failed to prove that he knowingly possessed the cocaine, Forrester challenges the sufficiency of the evidence as to both convictions. He contends that there was no credible evidence to show that he exercised dominion and control over the cocaine. He points out that Jenkins had equal access to the kitchen, and he argues that the drugs and money found in the master bedroom belonged to Jenkins. He argues that mere presence in the vicinity of contraband without more does not establish possession. See *Brookins v. State*, 202 Ga. App. 759, 760 (415 SE2d 674) (1992).

On the contrary, the evidence showed that shortly after the drug transaction foundered, Forrester returned to the house where he was observed disposing of cocaine in the kitchen where cocaine apparently was being processed for packaging, sale, and distribution. At

the time that Forrester was seen at the sink, the kitchen contained overwhelming evidence of obvious, ongoing drug activity — liquid cocaine in a pot on the stove, cocaine residue on a cutting board and on the electronic scales, and plastic bags typically used for packaging cocaine. The 113 grams did not include the liquid in the pot or the drugs poured down the kitchen drain. Eight fully loaded guns and over $10,000 in small denominations were found hidden throughout the house. Although the house had been leased in Jenkins's name, in light of the location of Forrester's personal papers, Forrester's apparent exercise of dominion and control over the drugs that he disposed of down the kitchen drain, and his conduct during the aborted drug deal, the jury could have found the essential elements of the crime of trafficking in cocaine. See *Boatwright v. State*, 193 Ga. App. 141, 142 (1) (387 SE2d 386) (1989).

Similarly, the record contains evidence to support a conviction for criminal solicitation to commit trafficking. "A person commits the offense of criminal solicitation when, with intent that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes, or otherwise attempts to cause the other person to engage in such conduct." OCGA § 16-4-7 (a). Although Forrester did not personally set up the sale and negotiate the price, it is obvious from the drug agents' testimony and Forrester's conduct that he was an active participant in the attempted sale of five ounces of cocaine, an amount consistent with trafficking as defined by quantity in OCGA § 16-13-31 (a) (1) (28 grams or more).[1] At the scheduled time and place, Forrester drove to the transaction and assumed control over the deal when he directed and importuned Fulcher to get in the car to "ride around and do a deal." This evidence supports a conviction for soliciting to commit trafficking in cocaine. See *Roura v. State*, 214 Ga. App. 43 (1) (447 SE2d 52) (1994).

2. Forrester contends that the trial court erred in denying his motion in limine to exclude Exhibit 8, a stack of papers found inside a briefcase in the master bedroom. He claims this exhibit contained "unbelievably damaging evidence" and impermissibly injected his character in evidence. He argues that the documents should have been excluded, especially since he offered to stipulate that documents were found at the residence with his name on them. He complains that "the jury was left with no doubt" that he had charges pending in another case and had bonded out of jail.

Although Exhibit 8 included two handwritten pages of notations about rent, gas, and water, the bulk of the 26-page exhibit pertained

---

[1] One gram is approximately equal to one-twenty-eighth of an ounce; thus, one ounce is the approximate equivalent of 28 grams. See Webster's New World Dictionary (3rd college ed.).

to a 1998 eight-count indictment against Forrester for several automobile break-ins and theft offenses. Exhibit 8 included police incident reports, bonding documents, and an investigative summary.

At the motion hearing, the State argued that these documents had a highly personal nature and were not the ordinary kind of papers that anyone other than Forrester would keep. In rejecting Forrester's offer to stipulate that some of his papers were found inside the house, the State argued that it wanted to offer the documents themselves to establish that Forrester "had a strong connection to the house" and was not just a casual visitor. Defense counsel conceded that the information was "certainly probative" but argued that the probative value was outweighed by the prejudicial effect. Finding that the documents were offered for a proper purpose, the trial court refused to exclude them.

Although this exhibit did tend to impugn Forrester's character,

> [e]vidence is not inadmissible simply because it might incidentally reflect on the defendant's character. [Cit.] *Any* evidence establishing that a defendant has committed the crimes for which he is being tried will inevitably say something about his character. What is forbidden is the introduction by the state in the first instance of evidence whose *sole* relevance to the crime charged is that it tends to show that the defendant has bad character.

(Punctuation omitted.) *Harris v. State,* 260 Ga. 860, 865 (6) (401 SE2d 263) (1991). Here, to counter the defense strategy of implicating Jenkins and distancing Forrester from the drug activity at the house, the prosecution wanted to establish Forrester's connection with the house. See *Miller v. State,* 163 Ga. App. 889, 890-891 (3) (296 SE2d 182) (1982) (material testimony does not become inadmissible because it incidentally puts a defendant's character in issue). Although the better practice would have been to redact heavily such an exhibit, we cannot say that the trial court abused its discretion in admitting it. See *Keller v. State,* 231 Ga. App. 546, 548 (4) (499 SE2d 713) (1998). In any event, in light of the overwhelming evidence of Forrester's guilt, even if the admission of the exhibit was error, it is highly probable that it did not contribute to the verdict. See *Osborne v. State,* 193 Ga. App. 276, 277 (3) (387 SE2d 383) (1989).

3. Forrester contends the trial court abused its discretion in denying his motion for mistrial. He claims his character was improperly placed in evidence when Detective Rainey testified that she had seen him before and knew him by the name of "Corey."

Rainey was asked, "And you then saw Mr. Forrester for the first time as you executed the warrant?" She responded, "No that was not

the first time that I had seen him." Rainey testified that she had seen Forrester before and knew him by the name of "Corey." No objection was made to these responses. Later, during cross-examination, Rainey was asked, "And so for purposes of the seizure report, you indicated that Mr. Forrester lived at 3900 Springleaf Court; isn't that right?" Rainey answered, "Yes sir. During the course of the investigation, that was the address that I found on him. Not the night that we served the search warrant. Through other investigations I had obtained that address on him."

Defense counsel sought a mistrial on the basis that the latter testimony placed Forrester's character in evidence and created an improper inference. The trial court disagreed. Correctly noting that the detective could have known Forrester "in a multitude of ways" that did not necessarily implicate him in criminal activity, the trial court denied the motion. No abuse of discretion has been shown in the trial court's ruling. See *Underwood v. State*, 218 Ga. App. 530, 534 (3) (462 SE2d 434) (1995).

4. Forrester contends that his conviction should be reversed because he was denied effective assistance of counsel. He claims that on three occasions during Detective Rainey's testimony, his trial lawyer failed to pose the requisite objections.

A trial court's finding on the issue of ineffectiveness must be upheld unless it is clearly erroneous. *McCant v. State*, 234 Ga. App. 433, 436 (3) (506 SE2d 917) (1998). Trial strategy and tactics, however, do not equate with ineffective assistance of counsel. *Phillips v. State*, 233 Ga. App. 557, 559 (504 SE2d 762) (1998). The decision as to whether to interpose a particular objection is a matter of trial strategy and, as such, ordinarily provides no basis for reversal. *Gosnell v. State*, 247 Ga. App. 508, 511 (3) (544 SE2d 477) (2001).

(a) Forrester claims his trial counsel was ineffective in failing to object after Rainey made a comment that he asserts implicated his right to remain silent. The response at issue occurred during cross-examination, when to impugn the caliber of the police investigation, defense counsel posed this series of questions:

DEFENSE COUNSEL: Did you make contact with Mr. Forrester's uncle?
DETECTIVE RAINEY: Who's his uncle?
DEFENSE COUNSEL: Did you go to an address on Thompson Mill Road in Lithonia?
DETECTIVE RAINEY: No, I didn't.
DEFENSE COUNSEL: No. Did you make contact with any of — were you aware of any family members that he had here in the Atlanta area?

DETECTIVE RAINEY: No. Mr. Forrester was not coopera-tive that night, would not talk to me.

In the context of this questioning, the detective's answer seems to explain her lack of knowledge about Forrester's family, a deficiency she attributed to the fact that Forrester did not volunteer any bio-graphical information to her about his relatives. Although Forrester argues otherwise, this testimony does not appear to be a comment on the exercise of the right to remain silent. See *Ford v. State*, 269 Ga. 139, 141 (3) (498 SE2d 58) (1998) (when considered in context, reporting substance of conversation did not comprise comment on exercise of constitutional right). In any event, in light of the over-whelming evidence of Forrester's guilt, reversal would not be war-ranted even had the issue been properly preserved. See *Crowder v. State*, 237 Ga. App. 312, 315 (2) (513 SE2d 752) (1999).

(b) Forrester claims that his trial counsel failed to object to an unresponsive answer that violated the trial court's ruling on a motion in limine that excluded similar transaction evidence. Before trial, Forrester successfully moved to exclude information that he had been implicated in three other drug transactions occurring Sep-tember 28, October 11, and October 18.

During cross-examination, when Rainey was asked, "you knew [Jenkins] was the subject of the investigation, did you not?" she replied, "I was not present with Detective Fulcher when he pur-chased the narcotics from Karteau Jenkins. I was only present when he purchased it from Mr. Forrester; so I had a name, but I didn't have a face." Although the defense and prosecution knew about the other drug deals, including one in which Forrester had sold drugs to Fulcher four days before the date of the indicted offenses, the jury had no way of knowing this information. In the context of Rainey's testimony that she accompanied Fulcher to make the drug purchase in this case, this ambiguous response would likely appear to be a ref-erence to that aborted transaction and not necessarily to an entirely different drug deal. Even assuming arguendo that defense counsel erred by not moving for a mistrial, Forrester has not shown that there is a reasonable probability that the outcome of his trial would have been different but for that error. See *Gordon v. State*, 273 Ga. 373, 377 (4) (541 SE2d 376) (2001).

(c) Forrester's final argument that he was prejudiced by his coun-sel's failure to object when the detective told the jury that she had seen him before and knew him as "Corey" was considered and rejected in Division 3.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED MAY 21, 2002.

*Maria Murcier-Ashley*, for appellant.

*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Assistant District Attorney*, for appellee.