## A06A2060. WALSH v. THE STATE.
### (642 SE2d 879)

MIKELL, Judge.

A jury convicted Brian Walsh of first and second degree forgery in connection with his tender and possession of forged United States currency at a Savannah bar. On appeal, he contends that the evidence was insufficient and that the trial court erred when it admitted the indictment against him and his prior convictions into evidence. Walsh also argues that his trial counsel was ineffective. We find no reversible error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence."[1] We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

Viewed in the light most favorable to the jury's verdict, the record shows that Walsh ordered a drink at Wet Willie's, a Savannah bar, and gave the bartender a $20 bill. Thinking that the apparently new bill did not "feel right," the bartender gave it to the security guard, an off-duty police officer who had received training in counterfeit detection from the United States Secret Service in preparation for the 1996 Olympics. After the officer also concluded that the bill was counterfeit, he approached Walsh and asked to see his identification. As Walsh went through his wallet, the officer saw another bill inside it, asked to see the second bill, and noted that it had the same serial number as the bill Walsh had given the bartender. A third bill with an identical serial number was also found in the bar's till.

Walsh identified himself as Bryan Lee, was arrested as such, and signed his first appearance form under that name. He was indicted under the name Brian Lee Walsh for first and second degree forgery (Counts 1 and 2), giving a false name to the officer at the bar (Count 3), and first degree forgery in connection with his signature on the

---

[1] (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

first appearance form (Count 4). He pled not guilty and signed the indictment as "Bryan Walsh."

Immediately after taking the stand in his own defense, Walsh produced a Georgia identification card, a social security card, and a South Carolina birth certificate, all of which showed that his name was Bryan Lee. All three pieces of evidence were admitted. The next day, the state tendered and the trial court signed and filed a nolle prosequi order concerning the third and fourth counts. The jury found Walsh guilty of the two remaining forgery counts, and Walsh was convicted and sentenced to ten years with seven to serve. His motion for new trial was denied.

1. Walsh first contends that the forged bills were admitted without a proper foundation and that the evidence was insufficient to support his conviction.

Walsh was convicted of first and second degree forgery in connection with the bill passed to the bartender and the bill taken from his wallet. The bartender, the officer, and a detective testified as to the chain of custody of these two bills, and also testified that the bills had physical characteristics inconsistent with genuine United States currency. The jury was authorized to conclude on the basis of this evidence that the bills were not genuine and that Walsh tendered one and possessed another for the purpose of defrauding the bar. Thus the evidence was sufficient to sustain Walsh's convictions for first and second degree forgery.[3]

2. The crux of this appeal is Walsh's contentions that the trial court erred when it (a) admitted the indictment bearing Walsh's signature into evidence; (b) allowed the state to impeach Walsh by means of a misdemeanor driving conviction; and (c) allowed the state to raise the matter of Walsh's aggravated assault conviction on cross-examination. We disagree.

Admission of evidence rests in the trial court's sound discretion, and evidence should be admitted if it is admissible for any legitimate purpose.[4] Specifically,

> evidence is not inadmissible simply because it might incidentally reflect on the defendant's character. *Any* evidence establishing that a defendant has committed the crimes for which he is being tried will inevitably say something about his character. What is forbidden is the introduction by the

---

[3] OCGA §§ 16-9-1; 16-9-2; see *Ebenezer v. State*, 191 Ga. App. 901 (1) (383 SE2d 373) (1989) (possession of forged United States currency was sufficient to sustain conviction for second degree forgery).

[4] *Krebsbach v. State*, 209 Ga. App. 474 (1) (433 SE2d 649) (1993).

state in the first instance of evidence whose *sole* relevance to the crime charged is that it tends to show that the defendant has bad character.[5]

(a) After the state rested, Walsh moved for a directed verdict on the ground that the state had failed to prove that the person on trial was actually Brian Walsh. The trial court noted that the indictment, including Walsh's signature on it, was not in evidence, and allowed the state to reopen its case in order to introduce the indictment bearing Walsh's signature as evidence concerning the false name count. Walsh objected that since he was listed in the indictment as Brian Walsh and asked to sign the document as such, he had committed no crime when he had done so.

As the state pointed out at trial, "[e]ither [Walsh] signed a false name when he signed [the indictment] or he signed a false name when he signed [the first appearance form]." But only one of these acts — the latter — was charged as a crime in the indictment. The third count alleged that Walsh gave the false name *Bryan Lee* at the bar, and the fourth that he signed this same name at his arraignment. Walsh's signature on the indictment — "Bryan Walsh" — was relevant to both of these crimes and could show that "Bryan Lee" was a false name.

Moreover, immediately after the filing of the nolle prosequi order, the trial court ruled that the first appearance form and the indictment should be withdrawn as exhibits, and that the indictment should go to the jury only as a "charging document." Walsh did not object. The trial court later instructed the jury that they "should not consider the indictment as evidence or implication of guilt." Because Walsh did not object to the trial court's disposition of this issue, because the indictment was withdrawn as evidence before the giving of the instruction, and because that instruction stated the applicable law accurately, Walsh's argument lacks merit.[6]

(b) After Walsh presented a Georgia identification card under the name Bryan Christopher Lee, the state asked in the course of its cross-examination whether Walsh had "a Georgia driver's license in the name of Brian Lee Walsh." When Walsh replied that he did not, the state proffered a Georgia driving record under that name. When Walsh then denied that he had ever had a Georgia driver's license or

---

[5] (Citation and punctuation omitted; emphasis in original.) *Forrester v. State*, 255 Ga. App. 456, 459 (2) (565 SE2d 825) (2002).

[6] See *Johnson v. State*, 233 Ga. App. 301-302 (2) (504 SE2d 8) (1998) (failure to object to trial court's curative instruction or to move for mistrial waives assertion on appeal that cure was insufficient); see also Council of Superior Court Judges, Suggested Pattern Jury Instructions, Criminal Cases: Vol. II, p. 8 (3d ed. 2005).

been convicted of driving under a suspended license, the state proffered convictions for DUI, driving on a suspended Georgia license, and open container violation. The trial court overruled Walsh's objections, denied his motion for mistrial, and admitted copies of the relevant documents. When the trial court filed the nolle prosequi order concerning the false name charges, Walsh renewed his objections to the introduction of all these documents. After hearing argument on this issue, the trial court confirmed its earlier admission of the DUI and suspended license convictions for purposes of impeachment. On appeal, Walsh not only renews his earlier objections, but adds that the documents' admission rendered his trial fundamentally unfair.

Under OCGA § 24-9-82, a witness "may be impeached by disproving the facts testified to by him," and no foundation (other than the witness's own testimony) is required in order to do so.[7] Here, while his true name was still in issue, Walsh testified that he had never held a Georgia driver's license, and then denied that he had ever had such a license suspended or been convicted of driving with a suspended license. The court did not abuse its discretion when it allowed the state to introduce evidence disproving the facts to which Walsh had testified.[8] Even if it had erred in admitting them, moreover, it is highly probable that such an error would not have contributed to the jury's verdict.[9]

(c) Prior to trial, Walsh made a motion in limine to exclude any reference to his prior criminal record. The state contended that it could permissibly ask Walsh whether he was under a court order not to drink because the question would go to his "motive." The trial court declined to rule specifically, stating only that the state was prohibited from putting Walsh's character at issue "until he places that [at] issue."

Walsh took the stand in his own defense and testified on direct examination that he was consuming alcohol in the bar on the day in question. In the course of trial, and while Walsh's giving of a false name was still at issue, the state cross-examined him as follows:

> Q: [Y]ou habitually use the name of Brian Walsh. . . . Yes or no?

---

[7] *Deaton v. Swanson*, 196 Ga. 833, 837 (2) (28 SE2d 126) (1943).

[8] See *Renn v. State*, 234 Ga. App. 790, 791 (1) (508 SE2d 174) (1998) (state could impeach defendant's testimony that he had never taken a breath alcohol test by questioning him about his prior DUI conviction).

[9] See *Johnson*, supra at 303-305 (3) (b)-(c) (blanket denials concerning identity made that issue one for the jury and authorized admission of prior convictions; overwhelming evidence of guilt made any error harmless).

A: No.

Q: Have you used it in this court in this case?

A: The court uses that on me. When I am arrested, I tell them that I am Br[y]an Christopher Lee. *The Court chooses to call me Brian Walsh, due to a charge that happened a long time ago.*

Q: What charge was that?

A: I do not recall, sir.

(Emphasis supplied.) After reminding Walsh that he was under oath, the prosecutor continued:

Q: Have you told this judge before through your signature that your name is Brian Walsh? This judge in this courtroom[?]

A: This judge here tried me as Brian Walsh years ago, and at that time, I told him that I was not Brian Walsh.

Q: Did you sign court documents in this courtroom as Brian Walsh repeatedly?

A: Because I was instructed to, sir, by my attorney.

The matter Walsh raised here, as he did in greater detail later in the same cross-examination, was a 2001 guilty plea and conviction for an aggravated assault on his brother. One of the special conditions of Walsh's probation in connection with that offense was that he "must remain alcohol and drug free and submit to periodic screens to prove his adherence to this condition." In the wake of the cross-examination, the trial court admitted copies of this 2001 plea and conviction over Walsh's objection.

"Testimony may be admissible for the purpose of impeaching the veracity of a witness even if it would be impermissible if offered for the purpose of impeaching the defendant's character."[10] Once Walsh had opened the door to evidence concerning the aggravated assault, the state had the right to assert that the probation conditions of Walsh's conviction for that crime tended to show that Walsh may have identified himself to officers as "Bryan Lee" in order to conceal that he was violating a special condition of his probation merely by drinking in the bar. For his part, Walsh repeatedly testified that he identified himself at all times as Bryan Lee,[11] testimony which tended to negate the state's imputation of a deceitful motive on the day in question by

---

[10] (Citation and punctuation omitted.) *Krebsbach*, supra at 474-475 (1).

[11] For example, Walsh testified:

Right then and there, [in March 2001, the date of his guilty plea in the aggravated assault,] that's when I got charged with being Brian Walsh, because that is what happened to my brother and everybody said I was a Walsh and I kept trying to tell

showing that "he made similar declarations at a time when the motive imputed to him did not exist."[12] Since it was for the jury to evaluate all such matters of credibility and impeachment once Walsh himself had opened the door, the trial court did not abuse its discretion when it admitted the aggravated assault conviction.[13]

3. Finally, Walsh contends that his trial counsel was ineffective (a) when he failed to object to the state's impeachment of his assertion that he had been known as Brian Walsh only since 2001 by means of a 1990 South Carolina conviction for misdemeanor marijuana possession under that name and (b) when he failed to provide the exculpatory identification documents to the state prior to trial. We disagree.

> The standard for determining ineffective assistance of counsel is whether trial counsel's performance was deficient and, if so, whether the deficient performance prejudiced the defense. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.[14]

(a) As we have noted above, Walsh testified that the police first identified him as Brian Walsh in the course of the case culminating in his 2001 guilty plea and conviction for aggravated assault. Under questioning, he asserted that he had been known under that name "anywhere from '99 to 2000, sir." The state then asked whether Walsh recalled being arrested in 1990 and convicted in 1991 for marijuana possession in South Carolina under the name Brian Christopher Walsh. Counsel did not object.

As we have held in Division 2 concerning Walsh's 2001 felony conviction, the state's reference to the 1990 misdemeanor conviction was permissible for purposes of impeachment. In the wake of Walsh's testimony raising his 2001 felony conviction for aggravated assault, moreover, counsel might well have decided that drawing the jury's

---

them I'm not a Walsh. They charged me as Walsh, they took me downtown as a Walsh, they arrested me as a Walsh, they tried me as a Walsh, the whole time I'm telling [them] I'm a Lee.

[12] (Citations and punctuation omitted.) *Mincey v. State*, 251 Ga. 255, 266 (13) (304 SE2d 882) (1983).

[13] See *Krebsbach*, supra at 474-475 (1) (when defendant has opened door to subject of his penchant to drive drunk by means of direct examination of his father that none of his children would drive drunk, evidence of defendant's prior DUI conviction was properly admitted).

[14] (Punctuation and footnotes omitted.) *Woods v. State*, 271 Ga. 452, 453 (2) (519 SE2d 918) (1999).

attention to yet another conviction would be a poor strategic choice.[15] Counsel was therefore not ineffective in failing to make a meritless objection.[16] Nor can Walsh show a reasonable probability that the result of his trial would have been different but for counsel's failure to object here.[17]

(b) Finally, trial counsel testified at the hearing on Walsh's motion for new trial that he had informed the state at a pretrial hearing that Walsh possessed a birth certificate showing that his true name was Bryan Christopher Lee. The trial court was entitled to believe this testimony, and thus to find that counsel was not ineffective for failing to produce the documents before trial.[18]

For all these reasons, we conclude that the trial court did not err when it denied Walsh's motion for new trial.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 1, 2007.

*Jennifer R. Burns*, for appellant.
*Spencer Lawton, Jr., District Attorney, Arvo H. Henifin, Assistant District Attorney*, for appellee.

---

[15] See *Branscomb v. State*, 272 Ga. App. 700, 702 (2) (613 SE2d 222) (2005) (where counsel's failure to object could have been strategic, defendant cannot make out ineffective assistance claim).

[16] See *Woods*, supra at 454 (2) (c).

[17] Id.

[18] See *Burdette v. State*, 276 Ga. App. 695, 700 (3) (624 SE2d 253) (2005) (trial court entitled to believe counsel over defendant concerning claim of inadequate consultation).