**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 20, 2014**

# In the Court of Appeals of Georgia

A14A1097. CRAPPS v. THE STATE.

BRANCH, Judge.

Alander Crapps was tried by a Gwinnett County jury and convicted of a single count of aggravated stalking.[1] He now appeals from the denial of his motion for a new trial, asserting that the evidence was insufficient to sustain his conviction and that the trial court erred in failing to give a curative instruction after the victim's testimony improperly placed Crapps's character in issue. Crapps also asserts a claim for ineffective assistance of counsel. We find no error and affirm.

On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict. *Martinez v. State*, 306 Ga. App. 512, 514 (702

---

[1] OCGA § 16-5-91.

SE2d 747) (2010). So viewed, the record shows that Crapps began a romantic relationship with Erica Pass in July 2011 and shortly thereafter the couple began living together, along with Pass's son, at Crapps's DeKalb County apartment. At some point during the couple's relationship, Crapps qualified for Social Security mental health disability benefits. Social Security would not pay the benefits directly to Crapps, however, and required that he designate another individual as his payee.[2] Crapps asked Pass to serve as his payee, telling her that he knew no one else who could fill that role. Pass explained that when she received those funds each month, she gave them directly to Crapps.

On February 12, 2012, after the couple had been living together for approximately six months, Crapps awakened Pass at around 3:00 a.m. and began screaming at her. Crapps, who had just examined the contents of Pass's cell phone, was demanding to know with whom Pass had been communicating via text message. Pass attempted to calm Crapps, but when her efforts failed she gathered her son and went to her car in an effort to leave. Crapps, however, followed Pass and stood behind

[2] According to Pass, if Social Security finds that a disability recipient might not use the benefits for their intended purposes (including the payment of rent, utilities, and food), then the agency will require the recipient to name a payee to receive and use those benefits on the recipient's behalf.

2

her car, thwarting her attempt to get away from him. When Pass rolled down her car window slightly to talk to Crapps, he reached inside the car and pulled on the window, breaking the window out of the car. Crapps then dragged Pass out of the car through the window opening, with Pass suffering significant cuts to her back in the process. Once Pass was out of the car, Crapps punched her in the face; he then took Pass's shoes and fled the scene.

Pass called the police, who eventually located and arrested Crapps. Crapps subsequently bonded out of jail and on February 16, 2012, the DeKalb County Magistrate Court entered an order of "Special Condition of Bond" for Crapps, which required Crapps to "[s]tay away, absolutely, directly or indirectly, by person and telephone, from the person, home, job, and school of Erica Pass . . . ." Immediately following the February incident and for some period of time following entry of the protective order, Pass continued to stay at Crapps's apartment periodically because she had no place else to sleep. On some of those occasions, Crapps was present. Approximately four to six weeks after the entry of the order, Pass was able to move

into the Gwinnett County home of her aunt. Additionally, Pass obtained a job at a Waffle House in Lawrenceville.[3]

Following her move to Gwinnett County, Pass initiated limited contact with Crapps via text message regarding his disability benefits and the fact that Crapps needed to designate a new payee to receive those funds on his behalf. When Crapps continued to use Pass as his payee, Pass went to the local Social Security office in May 2012 and had herself removed as payee for Crapps's disability benefits. She then informed Crapps of this fact via text message.

On May 27, 2012, Pass reported to her Waffle House job at around 9:00 p.m. Approximately one hour later, Pass's co-worker, Ashley Byrd, answered the Waffle House telephone and a woman asked if Pass was there. When Pass came to the phone, however, Crapps was on the other end of the line. Crapps then threatened Pass, telling her, "I'm going to fuck you up. You want to fuck with my money? I got you. I'm going to fuck you up. We're going to see about this." Pass immediately hung up the phone, but Crapps called back within minutes. Crapps then threatened Pass a second time, telling her: "You want to fuck with my money? You think it's a game? Yeah,

---

[3] Before their break up, Crapps was aware that Pass had applied for a job at Waffle House, but Pass never told him that she had been hired or at which Waffle House she was working.

4

I'm going to get your ass." Crapps then began laughing, at which point Pass told him to quit calling her and hung up the phone.

Sometime later that night, Byrd noticed a man standing outside the Waffle House staring at Pass; she called Pass's attention to the man, and Pass recognized Craps standing outside the restaurant grinning at her from approximately 20 to 25 feet away. After Crapps made eye contact with Pass, he fled the scene. Approximately two minutes later, Byrd and Pass walked into the restaurant's parking lot, where they heard air escaping from the tires on Pass's car. Upon examination, they discovered that the tires on the passenger side of Pass's car had been slashed. Pass called the police, and Crapps was subsequently arrested and indicted for aggravated stalking.

Crapps told his trial counsel that prior to the incident at the Waffle House, Pass had been calling him frequently. Thus, defense counsel decided that the strongest theory of defense was that Crapps's contact with Pass had been consensual and therefore could not be considered stalking. To support this defense, counsel subpoenaed Crapps's cell phone records for the months of February through July 2012, thinking they would show that Pass had initiated contact with Crapps despite the protective order. In response to that subpoena, Crapps's cell phone carrier provided counsel with the records for February and March 2012, but told him that no

5

records were available for the months of April through July 2012, either because they had been purged or could otherwise not be located.[4]

During his cross-examination of Pass, defense counsel attempted to support the theory that Crapps's contact with Pass after the entry of the protective order was consensual. He therefore asked Pass why, after the protective order was in place, she had continued to sleep at Crapps's apartment. Pass responded, "[b]ecause [Crapps] was incarcerated at the time I [obtained the protective order]. He was still in jail." Defense counsel immediately moved for a mistrial on the grounds that this response improperly placed Crapps's character in issue. The court denied that motion and the trial then continued without defense counsel requesting a curative instructive as to Pass's allegedly prejudicial testimony.

At the close of the State's evidence, Crapps moved for a directed verdict, which the trial court denied. The defense then rested without presenting any evidence. After the jury found Crapps guilty, defense counsel moved for a pre-sentencing, psychological evaluation. The trial court denied that motion but invited defense

---

[4] At the motion for new trial hearing, counsel stated that he would have liked a continuance to have an opportunity to explore more fully whether the relevant cell phone records could be retrieved, but did not seek such a continuance because Crapps had insisted the lawyer file a statutory speedy trial motion and he insisted on moving forward with the trial as scheduled.

counsel to present any available information regarding Crapps's mental health issues. During the sentencing phase, defense counsel stated that Crapps suffered from bipolar disorder.

Following his conviction, Crapps moved for a new trial. After an evidentiary hearing on that motion, the trial court denied the same. This appeal followed.

1. We first address Crapps's claim as to the sufficiency of the evidence. With respect to this claim of error,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In determining that question, we consider the inferences that can be logically derived from the evidence presented at trial. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Castaneira v. State*, 321 Ga. App. 418, 423 (2) (740 SE2d 400) (2013) (citation and punctuation omitted).

Under Georgia law, a person commits aggravated stalking when, in violation of a protective order, he "follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the

purpose of harassing and intimidating the other person." OCGA § 16–5–91 (a). For purposes of the stalking statute, "harassing and intimidating" is defined as:

> a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

OCGA § 16-5-90 (a) (1). To prove that an act was done for the purpose of harassing and intimidating the victim, therefore, the State must show that the act was part of a "pattern of harassing and intimidating behavior." *State v. Burke*, 287 Ga. 377, 379 (695 SE2d 649) (2010) (citation and punctuation omitted). See also *Louisyr v. State*, 307 Ga. App. 724, 728-729 (1) (706 SE2d 114) (2011). Thus, to convict Crapps of aggravated stalking, the State had to prove that Crapps contacted Pass without her consent and in violation of the protective order; that this conduct placed Pass in reasonable fear for her safety; and that the conduct at issue was part of a pattern of harassing and intimidating behavior towards Pass. *Louisyr*, 307 Ga. App. at 728 (1).

On appeal, Crapps contends that the evidence was insufficient to show that he engaged in any behavior for the purpose of harassing or intimidating Pass, because

the evidence showed that following the entry of the protective order, Pass continued to have consensual contact with Crapps. This argument is without merit.

The record shows that Pass admitted contacting Crapps via text message following the entry of the protective order for the limited purpose of ending Pass's status as the payee on Crapps's disability benefits. Particularly when viewed in light of the other evidence presented at trial, Pass's testimony on this issue does not support the conclusion that Pass consented to the contact at issue in this case.

Although Pass admitted initiating contact with Crapps via text message in an effort to sever the final tie that existed between the couple, Pass also testified that she never contacted Crapps by any method other than text. Pass's testimony made clear that she was careful to avoid any personal communication with Crapps either via phone or in person. Additionally, Pass moved to a different county and did not provide Crapps with her residential address or inform him of her place of employment. Crapps, however, went to some effort to locate Pass. As soon as he located Pass, Crapps immediately began threatening her and within an hour or two after making those threats, Crapps went to Pass's place of work and remained until he made Pass aware of his presence. Moreover, the evidence supports the conclusion that while at the Waffle House, Crapps vandalized Pass's car, effectively disabling

9

it. Pass testified that this conduct frightened her and left her feeling "unsafe" and "vulnerable," because Crapps was able to engage in this conduct even though she had moved to an undisclosed location and obtained a protective order against him.

This evidence supports the jury's conclusion that Crapps's conduct with respect to the Waffle House incident constituted a pattern of harassing and intimidating behavior and it is therefore sufficient to support Crapps's conviction for aggravated stalking. See *Slaughter v. State*, 327 Ga. App. 593, 595 (1) (a) (760 SE2d 609) (2014) (evidence showing that the defendant engaged in a series of acts that placed the victim "in reasonable fear for her safety" supported defendant's conviction for aggravated stalking); *Nosratifard v. State*, 320 Ga. App. 564, 569-570 (1) (740 SE2d 290) (2013) (evidence sufficed to show that defendant's conduct in sending threatening text messages to the victim and her family, which led the victim to fear for the safety of herself and her family, was done for the purpose of harassing and intimidating the victim). See also *Oliver v. State*, 325 Ga. App. 649, 652-653 (1) (753 SE2d 468) (2014) (a defendant's conduct over the course of a single day can establish a pattern of harassing and intimidating behavior).

2. Crapps next asserts that the trial court erred when, following Pass's testimony that Crapps was in jail at the time the protective order issued, it failed to

give the jury a curative instruction. As Crapps acknowledges, however, he did not request such an instruction. "When no objection to testimony is raised at trial, the issue is waived, and the error, if any, is not preserved for appeal." *Miller v. State*, 295 Ga. 769, 775-776 (3) (a) (___ SE2d ___) (2014), citing *Martin v. State*, 281 Ga. 778, 779-780 (2) (642 SE2d 837) (2007). Thus, "[f]ailure to give an unrequested curative instruction does not create reversible error." Id., citing *Hamilton v. State*, 274 Ga. 582, 584 (4) (555 SE2d 701) (2001) (even where an objection is raised, no reversible error is created by a trial court's failure to give an unrequested curative instruction). Accordingly, we can consider this enumeration only under the plain error rule.

"A plain error is one that is so clearly erroneous that it creates a likelihood of a grave miscarriage of justice or seriously affects the fairness, integrity, or public reputation of the judicial proceeding." *Jackson v. State*, 321 Ga. App. 607, 613-614 (2) (739 SE2d 86) (2013) (citation and punctuation omitted). To demonstrate plain error, an appellant must show that the error caused him harm, i.e., that the error likely affected the outcome at trial. Id. See also *Wagner v. State*, 311 Ga. App. 589, 594, n. 3 (716 SE2d 633) (2011) (Blackwell, J., concurring specially) ("Unlike a harmless-error analysis, where the appellee bears the burden of showing that an error did not likely affect the outcome below, a plain-error analysis requires the appellant to make

11

an affirmative showing that the error probably did affect the outcome below.") (citing *United States v. Olano*, 507 U. S. 725, 734 (II) (A) (113 SCt 1770, 123 LEd2d 508) (1993)). Crapps cannot meet this burden.

"[E]vidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue." *Ferguson v. State*, 307 Ga. App. 232, 237 (2) (704 SE2d 470) (2010) (citation and punctuation omitted). See also *Forrester v. State*, 255 Ga. App. 456, 459 (2) (565 SE2d 825) (2002) ("[a]ny evidence establishing that a defendant has committed the crimes for which he is being tried will inevitably say something about his character") (citation, punctuation and emphasis omitted). In this case, the indictment, which was read to the jury at the outset of trial, charged Crapps with contacting Pass "in violation of a condition of pretrial release." To convict Crapps of the crime charged, therefore, the State was required to prove that Crapps had violated a court order. Moreover, the circumstances that led to that court order were relevant to to the question of whether Crapps had engaged in a pattern of harassing and intimidating conduct towards Pass. See *Louisyr*, 307 Ga. App. at 729 (1) (the State may introduce evidence of the prior history between the parties to demonstrate that defendant had engaged in a pattern of behavior towards the victim). Those circumstances, in turn, included the fact that

12

Crapps was arrested and jailed as a result of the February incident and that he then became subject to the protective order.

Given both the language of the indictment and the elements of the crime at issue, we fail to see how Pass's testimony that Crapps was in jail at the time the protective order issued could have prejudiced him. Accordingly, we find no error by the trial court in failing to provide sua sponte a curative instruction to the jury following this testimony. See *Miller v. State*, 295 Ga. at 776 (3) (a) (Case No. S14A0597, decided October 6, 2014) (a witness's "passing references" to the defendant's incarceration does not impermissibly place the defendant's character into evidence; a jury could "reasonably assume that a defendant charged with [the crime at issue] would be arrested for the crime").

3. Crapps contends he received ineffective assistance of counsel, and he raises four separate grounds in support of this claim. To prove that any of these grounds resulted in ineffective assistance, Crapps must prove both that his lawyer's performance was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt. 2052, 80 LE2d 674) (1984). If Crapps cannot meet his burden of proving either prong of the

*Strickland* test, then we need not examine the other prong. *Causey v. State*, 319 Ga. App. 841, 842 (738 SE2d 672) (2013).

With respect to the first prong of the *Strickland* test, deficient performance, Crapps must show that his attorney performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in light of prevailing professional norms. *Strickland*, 466 U. S. at 687-688 (III) (A). To demonstrate that he suffered prejudice as a result of his attorney's performance, Crapps must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694 (III) (B). "This burden, though not impossible to carry, is a heavy one." *Arnold v. State*, 292 Ga. 268, 270 (2) (737 SE2d 98) (2013), citing *Kimmelman v. Morrison*, 477 U. S. 365, 382 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986).

(a) Crapps asserts that trial counsel was ineffective for failing to request, in a more timely fashion, Crapps's cell phone records for the months of February through July 2012. Had such a timely request been made, Crapps argues, the cell phone records for the most relevant months (presumably April and May 2012) would have been available. Crapps, however, failed to present any evidence at the hearing on his

14

new trial motion showing when trial counsel subpoenaed those documents and he therefore failed to prove that any such subpoena was untimely. Nor did Crapps show that had the request been made earlier, the records in question would in fact have been available. Thus, we have no basis for finding that trial counsel performed deficiently in this regard.

More importantly, Crapps has failed to show how the lack of these records prejudiced him. Although Crapps contends that these records would have demonstrated that Pass phoned him on a number of occasions prior to the Waffle House incident, that fact would not refute the evidence showing that on the evening in question Crapps engaged in a pattern of harassing and intimidating conduct towards Pass, in violation of a court order. Thus, even if the missing phone records showed that Pass had called Crapps after the protective order was in place, it is unlikely that such evidence would have resulted in Crapps's acquittal.

(b) In further support of his ineffective assistance claim, Crapps points to the fact that trial counsel was aware Crapps had received disability benefits because of his mental health, yet trial counsel failed to file a pretrial motion for a psychological evaluation of Crapps. Assuming arguendo that trial counsel's failure in this regard constituted deficient performance, Crapps has failed to show how this failure

15

prejudiced him. Because *Strickland* requires a defendant to offer "more than speculation to establish prejudice," *Hambrick v. Brannen*, 289 Ga. 682, 684 (715 SE2d 89) (2011) (citation omitted), a defendant asserting an ineffective assistance claim based on counsel's failure to obtain a psychological evaluation "must show a reasonable probability that such an evaluation would have affected the outcome at trial." *Arnold*, 292 Ga. at 272 (2) (b) (citation and punctuation omitted). See also *Jennings v. State*, 282 Ga. 679, 680 (2) (653 SE2d 17) (2007) ("[t]he burden is on the defendant to show . . . that he has a mental condition that should have been investigated and offered as proof of a defense to criminal liability . . . or of his incompetence to stand trial") (citation and punctuation omitted).

Here, the only evidence of Crapps's mental illness appears in the transcript of the sentencing phase of trial, where counsel told the trial court that Crapps suffered from bipolar disorder. At the hearing on his new trial motion, however, Crapps presented no medical records or other evidence reflecting this diagnosis, Crapps's treatment history for the disease, or his mental state at the time of the crime charged. Nor did he present any expert testimony showing what a pretrial evaluation could have revealed or that this information would have been favorable to Crapps's defense. Thus, "[b]ecause [Crapps] produced no expert testimony at the motion for new trial

16

hearing showing that a psychological evaluation would have aided an insanity defense, his ineffective assistance claim rests on speculation and fails for lack of demonstrated prejudice." *Perkins v. State*, 328 Ga. App. 508, 511 (1) (759 SE2d 626) (2014) (citations omitted). See also *Hambrick*, 289 Ga. at 684 (defendant failed to prove the prejudice prong of his ineffective assistance claim where he failed "to show there was a reasonable probability that he might have been found incompetent to stand trial, legally insane at the time of the crimes, or guilty but mentally ill," had defense counsel requested a pretrial psychological evaluation).

(c) At the hearing on his motion for a new trial, Crapps presented evidence that at the time of the February 2012 incident that resulted in the protective order against him, Pass was serving probation under the First Offender statute. OCGA § 42-8-60.[5] On appeal, Crapps contends that trial counsel was ineffective for failing to use this fact to impeach Pass. We find no merit in this assertion.

---

[5] OCGA § 42-8-60 provides, in relevant part: "Upon a verdict or plea of guilty or a plea of nolo contendere, but before an adjudication of guilt, in the case of a defendant who has not been previously convicted of a felony, the court may, without entering a judgment of guilt and with the consent of the defendant . . . [d]efer further proceeding and place the defendant on probation as provided by law." OCGA § 42-8-60 (a) (1).

17

Georgia law makes clear that "[t]he first offender record of one who is currently serving a first offender sentence or of one who has successfully completed the first offender sentence may not be used to impeach the first offender on general credibility grounds . . . because no adjudication of guilt has been entered." *Smith v. State*, 276 Ga. 263, 264-265 (2) (577 SE2d 548) (2003) (citations and punctuation omitted). Crapps argues, however, that counsel should have used Pass's probationary status as of February 2012 to impeach her motives and bias in reporting the DeKalb County incident to police. Crapps reasons that because Pass was on probation at the time of that incident, she had motivation to lie to police about any culpability she may have had with respect to the confrontation that resulted in the entry of the protective order.

A witness's first offender status may be used to impeach the witness's bias and motive only when the record shows that the witness may have received special, first offender treatment in exchange for testimony favorable to the State. See *Jackson v. State*, 316 Ga. App. 588, 593 (4) (730 SE2d 69) (2012) ("evidence of a witness's first offender status is admissible to 'reveal a possible bias, prejudice or ulterior motive on the part of the witness to give untruthful or shaded testimony in an effort to please the State.'"), quoting *Melson v. State,* 263 Ga. App. 647, 648 (2) (588 SE2d 822)

18

(2003). No such circumstances exist in this case. Rather, Crapps's argument is that Pass's probationary status would demonstrate that she had motive to lie to police in 2012 regarding Crapps's conduct in the DeKalb County incident. In other words, Crapps contends that trial counsel should have used Pass's probationary status to impeach her credibility. Given that the evidence was inadmissible for this purpose, counsel did not perform deficiently in failing to impeach Pass. Failure to proffer inadmissible evidence, like failure to make a futile motion, does not render defense counsel's performance deficient. See *Causey* 319 Ga. App. at 844 ("failure to pursue a futile motion does not constitute ineffective assistance") (citation and punctuation omitted). Accordingly, Crapps cannot prove this claim of ineffective assistance.

(d) Crapps further asserts that trial counsel performed deficiently when, during his cross-examination of Pass, he elicited her testimony that Crapps had been in jail at the time the protective order was entered. As discussed supra in Division 2, however, Crapps cannot show prejudice resulting from Pass's testimony. Accordingly, Crapps cannot prove the prejudice prong of this ineffective assistance claim.

For the reasons set forth above, we affirm the order of the trial court denying Crapps's motion for a new trial.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*

19